# LARKIN et al. *v.* GRENDEL'S DEN, INC.

No. 81–878.   Argued October 4, 1982—Decided December 13, 1982

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined.   REHNQUIST, J., filed a dissenting opinion, *post*, p. 127.

*Gerald J. Caruso*, Assistant Attorney General of Massachusetts, argued the cause *pro hac vice* for appellants. With him on the briefs for appellants Larkin et al. were *Francis X. Bellotti*, Attorney General, and *Paul W. Johnson*, Special Assistant Attorney General. *David B. O'Connor* and *Birge Albright* filed a brief for appellant Cambridge License Commission.

*Laurence H. Tribe* argued the cause and filed briefs for appellee.*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented by this appeal is whether a Massachusetts statute, which vests in the governing bodies of churches and schools the power effectively to veto applications for liquor licenses within a 500-foot radius of the church or school, violates the Establishment Clause of the First Amendment or the Due Process Clause of the Fourteenth Amendment.

I

A

Appellee operates a restaurant located in the Harvard Square area of Cambridge, Mass. The Holy Cross Armenian Catholic Parish is located adjacent to the restaurant; the back walls of the two buildings are 10 feet apart. In 1977, appellee applied to the Cambridge License Commission for approval of an alcoholic beverages license for the restaurant.

Section 16C of Chapter 138 of the Massachusetts General Laws provides: "Premises . . . located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto."[1]

---

*\*Charles S. Sims* and *John Reinstein* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

[1] Section 16C defines "church" as "a church or synagogue building dedicated to divine worship and in regular use for that purpose, but not a

Holy Cross Church objected to appellee's application, expressing concern over "having so many licenses *so* near" (emphasis in original).[2]   The License Commission voted to deny the application, citing only the objection of Holy Cross Church and noting that the church "is within 10 feet of the proposed location."

On appeal, the Massachusetts Alcoholic Beverages Control Commission upheld the License Commission's action.   The Beverages Control Commission found that "the church's objection under Section 16C was the only basis on which the [license] was denied."

Appellee then sued the License Commission and the Beverages Control Commission in United States District Court. Relief was sought on the grounds that § 16C, on its face and as applied, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the Establishment Clause of the First Amendment, and the Sherman Act.

The suit was voluntarily continued pending the decision of the Massachusetts Supreme Judicial Court in a similar challenge to § 16C, *Arno* v. *Alcoholic Beverages Control Comm'n*, 377 Mass. 83, 384 N. E. 2d 1223 (1979).   In *Arno*, the Massachusetts court characterized § 16C as delegating a

---

chapel occupying a minor portion of a building primarily devoted to other uses."   "School" is defined as "an elementary or secondary school, public or private, giving not less than the minimum instruction and training required by [state law] to children of compulsory school age."   Mass. Gen. Laws. Ann., ch. 138, § 16C (1974).

Section 16C originally was enacted in 1954 as an absolute ban on liquor licenses within 500 feet of a church or school, 1954 Mass. Acts, ch. 569, § 1. A 1968 amendment modified the absolute prohibition, permitting licenses within the 500-foot radius "if the governing body of such church assents in writing," 1968 Mass. Acts, ch. 435.   In 1970, the statute was amended to its present form, 1970 Mass. Acts, ch. 192.

[2] In 1979, there were 26 liquor licensees in Harvard Square and within a 500-foot radius of Holy Cross Church; 25 of these were in existence at the time Holy Cross Church objected to appellee's application.   See App. 69–72.

"veto power" to the specified institutions, *id.*, at 89, 384 N. E. 2d, at 1227, but upheld the statute against Due Process and Establishment Clause challenges. Thereafter, the District Court denied appellants' motion to dismiss.

On the parties' cross-motions for summary judgment, the District Court declined to follow the Massachusetts Supreme Judicial Court's decision in *Arno, supra*. The District Court held that § 16C violated the Due Process Clause and the Establishment Clause and held § 16C void on its face, *Grendel's Den, Inc.* v. *Goodwin*, 495 F. Supp. 761 (Mass. 1980). The District Court rejected appellee's equal protection arguments, but held that the State's actions were not immune from antitrust review under the doctrine of *Parker* v. *Brown*, 317 U. S. 341 (1943). It certified the judgment to the Court of Appeals for the First Circuit pursuant to 28 U. S. C. § 1292, and the Court of Appeals accepted certification.

A panel of the First Circuit, in a divided opinion, reversed the District Court on the Due Process and Establishment Clause arguments, but affirmed its antitrust analysis, *Grendel's Den, Inc.* v. *Goodwin*, 662 F. 2d 88 (1981).

Appellee's motion for rehearing en banc was granted and the en banc court, in a divided opinion, affirmed the District Court's judgment on Establishment Clause grounds without reaching the due process or antitrust claims, *Grendel's Den, Inc.* v. *Goodwin*, 662 F. 2d 102 (1981).

B

The Court of Appeals noted that appellee does not contend that § 16C lacks a secular purpose, and turned to the question of "whether the law 'has the *direct* and *immediate* effect of advancing religion' as contrasted with 'only a *remote* and *incidental* effect advantageous to religious institutions,'" *id.*, at 104 (emphasis in original), quoting *Committee for Public Education & Religious Liberty* v. *Nyquist*, 413 U. S. 756, 783, n. 39 (1973). The court concluded that § 16C confers a direct and substantial

benefit upon religions by "the grant of a veto power over liquor sales in roughly one million square feet . . . of what may be a city's most commercially valuable sites," 662 F. 2d, at 105.

The court acknowledged that § 16C "extends its benefits beyond churches to schools," but concluded that the inclusion of schools "does not dilute [the statute's] forbidden religious classification," since § 16C does not "encompass all who are otherwise similarly situated to churches in all respects except dedication to 'divine worship.'" *Id.*, at 106–107 (footnote omitted). In the view of the Court of Appeals, this "explicit religious discrimination," *id.*, at 105, provided an additional basis for its holding that § 16C violates the Establishment Clause.

The court found nothing in the Twenty-first Amendment to alter its conclusion, and affirmed the District Court's holding that § 16C is facially unconstitutional under the Establishment Clause of the First Amendment.

We noted probable jurisdiction, 454 U. S. 1140 (1982), and we affirm.

## II

### A

Appellants contend that the State may, without impinging on the Establishment Clause of the First Amendment, enforce what it describes as a "zoning" law in order to shield schools and places of divine worship from the presence nearby of liquor-dispensing establishments. It is also contended that a zone of protection around churches and schools is essential to protect diverse centers of spiritual, educational, and cultural enrichment. It is to that end that the State has vested in the governing bodies of all schools, public or private, and all churches,[3] the power to prevent the issu-

---

[3] Section 16C defines "church" as: "a church or synagogue building dedicated to *divine* worship" (emphasis added). Appellee argues that the statute unconstitutionally differentiates between theistic and nontheistic religions. We need not reach that issue. For purposes of this appeal, we

ance of liquor licenses for any premises within 500 feet of their institutions.

Plainly schools and churches have a valid interest in being insulated from certain kinds of commercial establishments, including those dispensing liquor. Zoning laws have long been employed to this end, and there can be little doubt about the power of a state to regulate the environment in the vicinity of schools, churches, hospitals, and the like by exercise of reasonable zoning laws.

We have upheld reasonable zoning ordinances regulating the location of so-called "adult" theaters, see *Young* v. *American Mini Theatres, Inc.*, 427 U. S. 50, 62–63 (1976); and in *Grayned* v. *City of Rockford*, 408 U. S. 104 (1972), we recognized the legitimate governmental interest in protecting the environment around certain institutions when we sustained an ordinance prohibiting willfully making, on grounds adjacent to a school, noises which are disturbing to the good order of the school sessions.

The zoning function is traditionally a governmental task requiring the "balancing [of] numerous competing considerations," and courts should properly "refrain from reviewing the merits of [such] decisions, absent a showing of arbitrariness or irrationality." *Arlington Heights* v. *Metropolitan Housing Dev. Corp.*, 429 U. S. 252, 265 (1977). See also, *e. g., Village of Belle Terre* v. *Boraas*, 416 U. S. 1, 7–9 (1974). Given the broad powers of states under the Twenty-first Amendment, judicial deference to the legislative exercise of zoning powers by a city council or other legislative zoning body is especially appropriate in the area of liquor

---

assume, as did the original panel of the Court of Appeals, that the Massachusetts courts would apply the protections of § 16C to "any building primarily used as a place of assembly by a bona fide religious group," 662 F. 2d, at 97, and thereby avoid serious constitutional questions that would arise concerning a statute that distinguishes between religions on the basis of commitment to belief in a divinity. See *Torcaso* v. *Watkins*, 367 U. S. 488, 495 (1961); *Everson* v. *Board of Education*, 330 U. S. 1, 15 (1947).

122

regulation.   See, *e. g.*, *California* v. *LaRue*, 409 U. S. 109 (1972); *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97, 106–110 (1980).

However, § 16C is not simply a legislative exercise of zoning power.   As the Massachusetts Supreme Judicial Court concluded, § 16C delegates to private, nongovernmental entities power to veto certain liquor license applications, *Arno* v. *Alcoholic Beverages Control Comm'n*, 377 Mass., at 89, 384 N. E. 2d, at 1227.[4]   This is a power ordinarily vested in agencies of government.   See, *e. g.*, *California* v. *LaRue, supra*, at 116, commenting that a "state agency . . . is itself the repository of the State's power under the Twenty-first Amendment."   We need not decide whether, or upon what conditions, such power may ever be delegated to nongovernmental entities; here, of two classes of institutions to which the legislature has delegated this important decisionmaking power, one is secular, but one is religious.   Under these circumstances, the deference normally due a legislative zoning judgment is not merited.[5]

B

The purposes of the First Amendment guarantees relating to religion were twofold: to foreclose state interference with the practice of religious faiths, and to foreclose the establishment of a state religion familiar in other 18th-century systems.   Religion and government, each insulated from the other, could then coexist.   Jefferson's idea of a "wall," see *Reynolds* v. *United States*, 98 U. S. 145, 164 (1879), quoting reply from Thomas Jefferson to an address by a committee of

---

[4] This recent construction of the statute by the highest court in Massachusetts is controlling on the meaning of § 16C.   See *O'Brien* v. *Skinner*, 414 U. S. 524, 531 (1974).

[5] For similar reasons, the Twenty-first Amendment does not justify § 16C.   The Twenty-first Amendment reserves power to states, yet here the State has delegated to churches a power relating to liquor sales.   The State may not exercise its power under the Twenty-first Amendment in a way which impinges upon the Establishment Clause of the First Amendment.

the Danbury Baptist Association (January 1, 1802), reprinted in 8 Writings of Thomas Jefferson 113 (H. Washington ed. 1861), was a useful figurative illustration to emphasize the concept of separateness. Some limited and incidental entanglement between church and state authority is inevitable in a complex modern society, see, *e. g.*, *Lemon* v. *Kurtzman*, 403 U. S. 602, 614 (1971); *Walz* v. *Tax Comm'n*, 397 U. S. 664, 670 (1970), but the concept of a "wall" of separation is a useful signpost. Here that "wall" is substantially breached by vesting discretionary governmental powers in religious bodies.

This Court has consistently held that a statute must satisfy three criteria to pass muster under the Establishment Clause:

> "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon* v. *Kurtzman, supra,* at 612–613, quoting *Walz* v. *Tax Comm'n, supra,* at 674.

See also *Widmar* v. *Vincent,* 454 U. S. 263, 271 (1981); *Wolman* v. *Walter,* 433 U. S. 229, 236 (1977). Independent of the first of those criteria, the statute, by delegating a governmental power to religious institutions, inescapably implicates the Establishment Clause.

The purpose of § 16C, as described by the District Court, is to "protec[t] spiritual, cultural, and educational centers from the 'hurly-burly' associated with liquor outlets." 495 F. Supp., at 766. There can be little doubt that this embraces valid secular legislative purposes.[6] However, these valid

---

[6] In this facial attack, the Court assumes that § 16C actually effectuates the secular goal of protecting churches and schools from the disruption associated with liquor-serving establishments. The fact that Holy Cross Church is already surrounded by 26 liquor outlets casts some doubt on the effectiveness of the protection granted, however.

secular objectives can be readily accomplished by other means—either through an absolute legislative ban on liquor outlets within reasonable prescribed distances from churches, schools, hospitals, and like institutions,[7] or by ensuring a hearing for the views of affected institutions at licensing proceedings where, without question, such views would be entitled to substantial weight.[8]

---

[7] See *California* v. *LaRue*, 409 U. S. 109, 120 (1972) (Stewart, J., concurring).

Section 16C, as originally enacted, consisted of an absolute ban on liquor licenses within 500 feet of a church or school, see n. 1, *supra;* and 27 States continue to prohibit liquor outlets within a prescribed distance of various categories of protected institutions, with certain exceptions and variations: Ala. Code § 28–3–17 (1977); Alaska Stat. Ann. § 04.11.410 (1980); Ark. Stat. Ann. § 48–345 (1977); Colo. Rev. Stat. § 12–47–138 (1978); Ga. Code Ann. § 3–3–21 (1982); Idaho Code §§ 23–303, 23–913 (1977); Ill. Rev. Stat., ch. 43, ¶ 127 (Supp. 1980); Ind. Code § 7.1–3–21–11 (1982); Kan. Stat. Ann. § 41–710 (1981); La. Rev. Stat. Ann. § 26–280 (West 1975); Md. Ann. Code, Art. 2B, §§ 46B, 47, 52A, 52C (1981 and Supp. 1982); Mich. Comp. Laws Ann. §§ 436.17a, 436.17c (1978 and Supp. 1982); Minn. Stat. Ann. § 340.14 (1972 and Supp. 1982); Miss. Code Ann. § 67–1–51 (Supp. 1982); Mont. Code Ann. § 16–3–306 (1981); Neb. Rev. Stat. § 53–177 (1978); N. H. Rev. Stat. Ann. § 177:1 (1978); N. M. Stat. Ann. § 60–6B–10 (1981); N. C. Gen. Stat. § 18A–40 (1978) (schools); Okla. Stat., Tit. 37, § 534 (1981); R. I. Gen. Laws § 3–7–19 (Supp. 1982); S. C. Code § 61–3–440 (1976); S. D. Codified Laws § 35–2–6.1 (Supp. 1982); Tex. Alco. Bev. Code Ann., § 109.33 (1978); Utah Code Ann. § 16–6–13.5 (Supp. 1981); W. Va. Code § 11–16–12 (1974); Wis. Stat. Ann. § 125.68 (West Supp. 1982–1983). The Court does not express an opinion as to the constitutionality of any statute other than that of Massachusetts.

[8] Eleven States have statutes or regulations directing the licensing authority to consider the proximity of the proposed liquor outlet to schools or other institutions in deciding whether to grant a liquor license: Cal. Bus. & Prof. Code Ann. § 23789 (West 1964); Conn. Gen. Stat. § 30–46 (1981); Del. Code Ann., Tit. 4, § 543 (1974 and Supp. 1980); Haw. Rev. Stat. § 281–56 (1976); Mich. Comp. Laws Ann. §§ 436.17a, 436.17c (1978 and Supp. 1982–1983) (certain classes of licenses); N. C. Gen. Stat. § 18A–40 (1978) (churches); Ohio Rev. Code Ann. § 4303.26 (Supp. 1981); Pa. Stat. Ann., Tit. 47, §§ 4–404, 4–432(d) (Purdon 1969 and Supp. 1982); Tenn. Code Ann. § 57–5–105 (Supp. 1982); Va. Code § 4–31 (Supp. 1982); Vt. Liquor Control Bd. Regs. ¶ 39 (1976).

Appellants argue that § 16C has only a remote and incidental effect on the advancement of religion. The highest court in Massachusetts, however, has construed the statute as conferring upon churches a veto power over governmental licensing authority. Section 16C gives churches the right to determine whether a particular applicant will be granted a liquor license, or even which one of several competing applicants will receive a license.

The churches' power under the statute is standardless, calling for no reasons, findings, or reasoned conclusions. That power may therefore be used by churches to promote goals beyond insulating the church from undesirable neighbors; it could be employed for explicitly religious goals, for example, favoring liquor licenses for members of that congregation or adherents of that faith. We can assume that churches would act in good faith in their exercise of the statutory power, see *Lemon* v. *Kurtzman, supra,* at 618–619, yet § 16C does not by its terms require that churches' power be used in a religiously neutral way. "[T]he potential for conflict inheres in the situation," *Levitt* v. *Committee for Public Education,* 413 U. S. 472, 480 (1973); and appellants have not suggested any "effective means of guaranteeing" that the delegated power "will be used exclusively for secular, neutral, and nonideological purposes." *Committee for Public Education & Religious Liberty* v. *Nyquist,* 413 U. S., at 780.[9] In addition, the mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to

---

[9] Appellants argue that the Beverages Control Commission may reject or ignore any objection made for discriminatory or illegal reasons. This contention appears flatly contradicted by the Massachusetts Supreme Judicial Court's own interpretation of the statute, see *Arno* v. *Alcoholic Beverages Control Comm'n,* 377 Mass. 83, 90, 92, and n. 23, 384 N. E. 2d 1223, 1228, 1229, and n. 23 (1979). In any event, an assumption that the Beverages Control Commission might review the decisionmaking of the churches would present serious entanglement problems. See *Lemon* v. *Kurtzman,* 403 U. S. 602, 619 (1971); *NLRB* v. *Catholic Bishop of Chicago,* 440 U. S. 490 (1979).

religion in the minds of some by reason of the power conferred.  It does not strain our prior holdings to say that the statute can be seen as having a "primary" and "principal" effect of advancing religion.

Turning to the third phase of the inquiry called for by *Lemon* v. *Kurtzman,* we see that we have not previously had occasion to consider the entanglement implications of a statute vesting significant governmental authority in churches.  This statute enmeshes churches in the exercise of substantial governmental powers contrary to our consistent interpretation of the Establishment Clause; "[t]he objective is to prevent, as far as possible, the intrusion of either [Church or State] into the precincts of the other." *Lemon* v. *Kurtzman,* 403 U. S., at 614.  We went on in that case to state:

> "Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction *and churches excluded from the affairs of government.*  The Constitution decrees that religion must be a private matter for the individual, the family, and the institutions of private choice, and that while some involvement and entanglement are inevitable, lines must be drawn." *Id.,* at 625 (emphasis added).

Our contemporary views do no more than reflect views approved by the Court more than a century ago:

> "'The structure of our government has, for the preservation of civil liberty, rescued the temporal institutions from religious interference.  On the other hand, it has secured religious liberty from the invasion of the civil authority.'" *Watson* v. *Jones,* 13 Wall. 679, 730 (1872), quoting *Harmon* v. *Dreher,* 1 Speers Eq. 87, 120 (S. C. App. 1843).

As these and other cases make clear, the core rationale underlying the Establishment Clause is preventing "a fusion of governmental and religious functions," *Abington School Dis-*

*trict* v. *Schempp*, 374 U. S. 203, 222 (1963). See, *e. g.*, *Walz* v. *Tax Comm'n*, 397 U. S., at 674–675; *Everson* v. *Board of Education*, 330 U. S. 1, 8–13 (1947).[10] The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions.

Section 16C substitutes the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications. The challenged statute thus enmeshes churches in the processes of government and creates the danger of "[p]olitical fragmentation and divisiveness on religious lines," *Lemon* v. *Kurtzman, supra,* at 623. Ordinary human experience and a long line of cases teach that few entanglements could be more offensive to the spirit of the Constitution.[11]

The judgment of the Court of Appeals is affirmed.

*So ordered.*

JUSTICE REHNQUIST, dissenting.

Dissenting opinions in previous cases have commented that "great" cases, like "hard" cases, make bad law. *Northern Securities Co.* v. *United States*, 193 U. S. 197, 400–401 (1904) (Holmes, J., dissenting); *Nixon* v. *Administrator of General*

---

[10] At the time of the Revolution, Americans feared not only a denial of religious freedom, but also the danger of political oppression through a union of civil and ecclesiastical control. B. Bailyn, Ideological Origins of the American Revolution 98–99, n. 3 (1967). See *McDaniel* v. *Paty*, 435 U. S. 618, 622–623 (1978). In 18th-century England, such a union of civil and ecclesiastical power was reflected in legal arrangements granting church officials substantial control over various occupations, including the liquor trade. See, *e. g.*, 26 Geo. 2, ch. 31, § 2 (1753) (church officials given authority to grant certificate of character, a prerequisite for an alehouse license); S. Webb & B. Webb, The History of Liquor Licensing in England, Principally from 1700 to 1830, pp. 8, n. 1, 62–67, 102–103 (1903).

[11] Appellee also challenges the statute as a violation of due process. In light of our analysis we need not and do not reach that claim.

*Services,* 433 U. S. 425, 505 (1977) (BURGER, C. J., dissenting). Today's opinion suggests that a third class of cases—silly cases—also make bad law. The Court wrenches from the decision of the Massachusetts Supreme Judicial Court the word "veto," and rests its conclusion on this single term. The aim of this effort is to prove that a quite sensible Massachusetts liquor zoning law is apparently some sort of sinister religious attack on secular government reminiscent of St. Bartholemew's Night. Being unpersuaded, I dissent.

In its original form, § 16C imposed a flat ban on the grant of an alcoholic beverages license to any establishment located within 500 feet of a church or a school. 1954 Mass. Acts, ch. 569, § 1. This statute represented a legislative determination that worship and liquor sales are generally not compatible uses of land. The majority concedes, as I believe it must, that "an absolute legislative ban on liquor outlets within reasonable prescribed distances from churches, schools, hospitals, and like institutions," *ante,* at 124 (footnote omitted), would be valid. See *California* v. *LaRue,* 409 U. S. 109, 120 (1972) (Stewart, J., concurring).

Over time, the legislature found that it could meet its goal of protecting people engaged in religious activities from liquor-related disruption with a less absolute prohibition. Rather than set out elaborate formulae or require an administrative agency to make findings of fact, the legislature settled on the simple expedient of asking churches to object if a proposed liquor outlet would disturb them. Thus, under the present version of § 16C, a liquor outlet within 500 feet of a church or school can be licensed unless the affected institution objects. The flat ban, which the majority concedes is valid, is more protective of churches and more restrictive of liquor sales than the present § 16C.

The evolving treatment of the grant of liquor licenses to outlets located within 500 feet of a church or a school seems to me to be the sort of legislative refinement that we should encourage, not forbid in the name of the First Amendment. If a particular church or a particular school located within the

500-foot radius chooses not to object, the State has quite sensibly concluded that there is no reason to prohibit the issuance of the license. Nothing in the Court's opinion persuades me why the more rigid prohibition would be constitutional, but the more flexible not.

The Court rings in the metaphor of the "wall between church and state," and the "three-part test" developed in *Walz* v. *Tax Comm'n*, 397 U. S. 664 (1970), to justify its result. However, by its frequent reference to the statutory provision as a "veto," the Court indicates a belief that § 16C effectively constitutes churches as third houses of the Massachusetts Legislature. See *ante*, at 125–126. Surely we do not need a three-part test to decide whether the grant of actual legislative power to churches is within the proscription of the Establishment Clause of the First and Fourteenth Amendments. The question in this case is not whether such a statute would be unconstitutional, but whether § 16C is such a statute. The Court in effect answers this question in the first sentence of its opinion without any discussion or statement of reasons. I do not think the question is so trivial that it may be answered by simply affixing a label to the statutory provision.

Section 16C does not sponsor or subsidize any religious group or activity. It does not encourage, much less compel, anyone to participate in religious activities or to support religious institutions. To say that it "advances" religion is to strain at the meaning of that word.

The Court states that § 16C "advances" religion because there is no guarantee that objections will be made "in a religiously neutral way." *Ante*, at 125. It is difficult to understand what the Court means by this. The concededly legitimate purpose of the statute is to protect citizens engaging in religious and educational activities from the incompatible activities of liquor outlets and their patrons. The only way to decide whether these activities are incompatible with one another in the case of a church is to ask whether the activities of liquor outlets and their patrons may interfere with religious

activity; this question cannot, in any meaningful sense, be "religiously neutral." In this sense, the flat ban of the original § 16C is no different from the present version. Whether the ban is unconditional or may be invoked only at the behest of a particular church, it is not "religiously neutral" so long as it enables a church to defeat the issuance of a liquor license when a similarly situated bank could not do the same. The State does not, in my opinion, "advance" religion by making provision for those who wish to engage in religious activities, as well as those who wish to engage in educational activities, to be unmolested by activities at a neighboring bar or tavern that have historically been thought incompatible.

The Court is apparently concerned for fear that churches might object to the issuance of a license for "explicitly religious" reasons, such as "favoring liquor licenses for members of that congregation or adherents of that faith."* *Ante*, at 125. If a church were to seek to advance the interests of its members in this way, there would be an occasion to determine whether it had violated any right of an unsuccessful applicant for a liquor license. But our ability to discern a risk of such abuse does not render § 16C violative of the Establishment Clause. The State can constitutionally protect churches from liquor for the same reasons it can protect them from fire, see *Walz, supra,* at 671, noise, see *Grayned* v. *City of Rockford,* 408 U. S. 104 (1972), and other harm.

The heavy First Amendment artillery that the Court fires at this sensible and unobjectionable Massachusetts statute is both unnecessary and unavailing. I would reverse the judgment of the Court of Appeals.

---

*I doubt whether there exists a denomination that considers supporting the liquor license applications of its members to be a part of its theology. However else a church's goal in objecting to issuance of a liquor license on such a basis might be characterized, it would certainly be strictly temporal. I note in passing that § 16C does not confer on any church any power to obtain a liquor license for anyone.