**Reverend Joseph TURNER**

v.

**Mr. J.L.G. PARSONS, Medical Center Director.**

**Civ. A. No. 84–1340.**

United States District Court, E.D. Pennsylvania.

May 30, 1985.

Albert J. Olizi, Jr., Philadelphia, Pa., for plaintiff.

Joseph M. Masuik, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before this court are cross motions for summary judgment filed by defendant J.L.G. Parsons, Medical Center Director, Veterans Administration Hospital, and plaintiff, Reverend Joseph Turner. Further, plaintiff has made a separate motion to amend his complaint.

Plaintiff, in his original complaint, alleges that he was denied employment by the Veterans Hospital, an agency of the executive department of the United States. Plaintiff has applied for a position as chaplain in the hospital. Plaintiff, a Catholic priest, had the endorsement of his superior within his particular religious society within the Catholic Church. However, plaintiff asserts that he was denied consideration because the Military Vicariate, a central agency of the Catholic Church, did not grant its endorsement. This endorsement is required by Veterans Administration regulations. Furthermore, plaintiff alleges that he was denied consideration because of his age, being 53 at the time of his application. Therefore, plaintiff's claims are that he was denied employment because of his religious faith and his age.

Plaintiff claims that other candidates for a chaplaincy in other denominations are required only to secure the endorsement of their immediate superior, while the Catholic Church requires approval by the Military Vicariate. To remedy those alleged wrongs, plaintiff prays for relief in the form of an injunction against the Veterans Administration from discriminating between religious endorsements, to provide equal opportunity to Catholic chaplains, and to provide backpay to plaintiff.

Plaintiff now seeks to amend his complaint, bringing in new defendants. The new defendants would be Harry Walters, the Administrator of the Veterans Administration, the Military Vicariate, a religious corporation organized under the laws of the State of New York, and Archbishop Joseph Ryan, president of the Military Vicariate. The allegations in the proposed amended complaint, while generally the same as the original complaint, are framed to also shed light on purported wrongs committed by the Military Vicariate. Plaintiff contends that the Military Vicariate wrongfully interfered in the hiring practice of the United States Government.

Once a responsive pleading is served, a party must seek leave of court to amend his pleading; leave should be freely given. Fed.R.Civ.P. 15. However, leave need not be given where the amended pleading may be defeated by a motion to dismiss or a motion for summary judgment. *Collyard v. Washington Capitals*, 477 F.Supp. 1247,

1249 (D.Minn.1979); *Bernstein v. National Liberty International Corp.,* 407 F.Supp. 709, 714–715 (E.D.Pa.1976). Because of this, I will first address defendant's motion for summary judgment.

Defendant asserts that plaintiff was not eligible for consideration since he failed to meet the minimum qualifications required by the Veterans Administration for a chaplain's position. The Manual of the Veterans Administration (Manual), M–2 Part II (February 23, 1966), defendant's Exhibit A,[1] sets forth the criteria for employment. Specifically, Section 1.06 of the Manual states in pertinent part:

1.06 SELECTION AND APPOINTMENT

a. To be eligible for appointment as a chaplain in the VA, a clergyman must meet certain basic minimum qualifications (see app. 17A DM & S Supp., MP–5, pt. I):

(1) Must be a citizen of the United States;

(2) Must be an ordained clergyman;

(3) Must have the bachelor of arts plus the bachelor of divinity degrees or bachelor of sacred theology (or their equivalents in terms of semester hours of undergraduate and graduate study), from an accredited college, university or theological institution;

(4) Must have had at least 3 years of experience after ordination, in which the principal duty was as a clergyman after completion of his professional preparation; and,

(5) *Must have an ecclesiastical endorsement from the officially recognized endorsing body of his denomination.* The endorsement, which the applicant must furnish the VA, is the written statement that the applicant's denomination certifies to his good standing as a regularly ordained clergyman of the denomination for the 12-month period prior to the endorsement.

(6) It also certifies that the individual so endorsed is, in the judgment of the endorsing body, qualified to represent the denomination in this specialized ministry.

(emphasis added).

Furthermore, the defendant has submitted an affidavit of Simeon Kobrinetz, the Director of Chaplain Service, Veterans Administration Central office, who avers that for the appointment of Catholic priests the official endorsing agency is the Military Vicariate. It is further averred that Reverend Joseph J. Turner, plaintiff in this action, has been refused such endorsement from the Military Vicariate.

Defendant has submitted for my consideration, a document titled "Vademecum" which is published by the Military Vicariate. This document recites the authority within the Catholic Church, the Military Vicariate has over priests who desire to be or are chaplains. Specifically, it states in part, "[a]ccording to the decree of erection of the Military Vicariate of the United States of America, dated September 8, 1957, the following are subjects of the Military Vicar: ... 2) Priests who are chaplains of hospitals commonly called 'Veterans administration Medical Centers and Domiciliaries.'" (Vademecum at 25).

Further, it is stated by the Military Vicariate:

1) to function as a chaplain in ... the Armed Forces or Veterans Administration, a priest must have the endorsement of the Military Vicar.... This means that for each of the following sets of circumstances, a priest must request endorsement by the Military Vicariate:
....

b. to enter upon ... V.A. or other duty, even though already endorsed for inactive duty.

Vademecum at 23.

Because plaintiff has failed to secure the endorsement of the Military Vicariate, he fails to meet the employment criteria set

---

**1.** The Veterans Administration, through its staff attorney has submitted a declaration under penalty of perjury that defendants' Exhibit A contains the Veterans Administration Chaplaincy Services Administration Programs.

out by the Veterans Administration for a chaplaincy position. However, it is this very requirement of Military Vicariate approval which plaintiff asserts violates the Establishment Clause of the first amendment.

Plaintiff contends the government's requirement of prior church approval of chaplaincy candidates permits excessive entanglement between church and state relations, thus in violation of the United States Supreme Court's holding in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Indeed, the Court in *Lemon* did hold that a statute, so as not to offend the Establishment Clause, must pass a three prong test which is: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Id.* at 612–613, 91 S.Ct. at 2111 (citation omitted).

The Court's analysis in *Lemon* has been tempered by subsequent opinions of the Court. In *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 *reh'g denied,* —— U.S. ——, 104 S.Ct. 2376, 80 L.Ed.2d 848 (1984), the Court stated:

> In every Establishment Clause case, we must reconcile the inescapable tension between the objective of preventing unnecessary intrusion of either the church or the state upon the other, and the reality that, as the Court has so often noted, total separation of the two is not possible.

*Id.* 104 S.Ct. at 1358–59.

> In each case, the inquiry calls for line drawing; no fixed, per se rule can be framed. The Establishment Clause like the Due Process Clauses is not a precise, detailed provision in a legal code capable of ready application. The purpose of the Establishment Clause 'was to state an objective, not to write a statute.' *Walz, supra,* [*v. Tax Commission,* 397 U.S. 664] at 668, 25 L.Ed.2d 697, 90 S.Ct. 1409. The line between permissible relationships and those barred by the Clause can no more be straight and unwavering than due process can be defined in as single stroke or phrase or test. The Clause erects a 'blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship.' *Lemon, supra,* [403 U.S.] at 614, 29 L.Ed.2d 745, 91 S.Ct. 2105.

> In the line-drawing process we have often found it useful to inquire whether the challenged law or conduct has a secular purpose, whether its principal or primary effect is to advance or inhibit religion, and whether it creates an excessive entanglement of government with religion. *Lemon, supra.* But, we have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area.

*Id.* 104 S.Ct. at 1361–62 (remaining citations omitted).

Plaintiff further asserts that the United States Supreme Court's holding in *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982) should be controlling in the instant matter. In *Larkin* the Court held invalid a Massachusetts statute which allowed *inter alia* a church [2] to object to the granting of a liquor license to any establishment within 500 feet of the church. If the church objected, the license could not issue. The Court interpreted the statute as giving a veto over the issuance of a liquor license, and therefore an impermissible delegation of legislative power to religious organizations. Although the Court acknowledged certain permissible incidental entanglement between church and state, it found that there was a substantial breach between the separation of church and state. *Id.* at 123, 103 S.Ct. at 510.

---

**2.** Section 16C of chapter 138 of the Massachusetts General Laws defines a church as follows: "a church or synagogue building dedicated to divine worship and in regular use for that purpose, but not a chapel occupying a minor portion of a building primarily devoted to other uses." *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 117, n. 1, 103 S.Ct. 505, 507, n. 1, 74 L.Ed.2d 297 (1982).

I find the *Larkin* case distinguishable from the matter now before me. The armed forces provide chaplains to accommodate its members' right to freedom of religion which is found in the first amendment Free Exercise Clause. *A fortiori* there are many instances where the Free Exercise Clause and the Establishment Clause will be in tension. *Lynch v. Donnelly, supra.* Therefore, the Free Exercise Clause and Establishment clause must be examined in tandem. The Second Circuit Court of Appeals recently held in *Katcoff v. Marsh,* 755 F.2d 223 (2d Cir.1985) that:

> The second provision of the Constitution which plays a vital role in our interpretation of the Establishment Clause is the Free Exercise Clause of the same Amendment. It is readily apparent that this Clause, like the Establishment Clause, obligates Congress, upon creating an Army, to make religion available to soldiers who have been moved by the Army to areas of the world where religion of their own denominations is not available to them. Otherwise the effect of compulsory military service could be to violate their rights under both Religion Clauses of the First Amendment. Unless the Army provided a chaplaincy it would deprive the soldier of his rights under the Establishment Clause not to have religion inhibited and of his right under the Free Exercise Clause to practice his freely chosen religion.

*Id.* at 234.[3]

I find the logic of the Second Circuit sound. However, the fact that the Armed Forces may have a duty to hire chaplains, does not give it the power to determine which individuals can or may represent the various religious denominations. It is this entanglement which the Court in *Lemon, supra,* sought to guard against. The Court in *Larkin, supra,* prohibited the church from having a veto over the issuance of liquor licenses. The issuance of a liquor license is secular. In the matter before me, there is a requirement that a church endorse a person who will represent the church to servicemen and servicewomen. These people who seek the endorsement of the church (in effect, church approval is a condition precedent to being qualified to take a position of a Catholic chaplain) will not provide a service which is secular in nature; rather their function is primarily religious, namely, occupying the position of chaplain.

Thus, the distinction between the matter now before me and the matter before the *Larkin's* Court is that here the church seeks to control factors which control its religious destiny and those who may represent it, while in *Larkin's* the Court refused to allow a church to control matters which are primarily secular.

For this court to decide who may or may not represent a certain religion would be for this court to go to the heart of religious organizations and their beliefs and impermissibly interfere in their operations. I cannot conceive of any greater interference or entanglement a government could launch than to dictate who may or may not represent a religious faith to its flock. Moreover, if this were to be done, it would change or interfere with the expectations the followers of a certain religious faith may have, as the government would be the party which would determine who will lead the flock.

■ I turn to plaintiff's allegation that he was denied consideration for a chaplain's position because of his age, which was 53 at the time of his application. Plaintiff's allegation lacks substance because he has not met the criteria for employment by obtaining the endorsement of the Military Vicariate. Furthermore, plaintiff has not established or even alleged that the requirement of having the endorsement of the Military Vicariate is a pretext for impermissible age discrimination.

---

**3.** The other provision the Second Circuit relied upon to uphold the constitutionality of the Army hiring chaplains is Congress' war powers.

In conclusion, plaintiff has complained that the Veterans Administration has violated the Establishment Clause by requiring the Military Vicariate to endorse applicants for a position as a Catholic chaplain within the Veterans Administration. I hold, as a matter of law, that for the government to determine who is qualified from the various religious faiths to lead the flock of Catholicism would be for the government to impermissibly interfere or entangle itself in religion. The fact that the government must rely upon the various religious institutions for their consent or advice before hiring a person as a chaplain is one situation where absolute separation between church and state is not possible. *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1358–1359, 79 L.Ed.2d 604 (1984); *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971).

Accordingly, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted. Plaintiff's motion for leave to amend will be dismissed as moot.