NORTH CAROLINA CIVIL LIBERTIES UNION, et al., Plaintiffs,

v.

Honorable H. William CONSTANGY, Defendant.

No. C–C–89–438–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 18, 1990.

George Daly, Charles E. Johnson, Moore & Van Allen, Charlotte, N.C., Norman B. Smith, Smith, Patterson, Follin, Curtis James & Harkey, Greensboro, N.C., William Simpson Legal Director, Raleigh, N.C., James F. Wyatt, III, Charlotte, N.C., for plaintiffs.

Norma S. Harrell, N.C. Dept. of Justice, Raleigh, N.C., John W. Whitehead, Charlottesville, Va., Larry L. Crain, Brentwood, Tenn., James T. Williams, Jr., Robert A. Singer, Jim W. Phillips, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

### FACTS

The undisputed facts of this case are as follows:

The defendant, the Honorable H. William Constangy, has been a duly appointed Judge of the District Court of the Twenty–Sixth Judicial District of North Carolina since March 3, 1989. His salary is paid by the State of North Carolina.

Judge Constangy holds court regularly during approximately 45 weeks per year. Since May of 1989, his court has been opened in the morning by the bailiff with the cry, "Everyone rise; this Court is now in session, Honorable William Constangy, Judge, presiding. Please be seated."

After the bailiff's opening cry, Judge Constangy has regularly seated himself behind the bench, turned on the light at the bench, and stated, "Let us pause for a moment of prayer." He has then recited the following prayer aloud:

O Lord, our God, our Father in Heaven, we pray this morning that you will place your divine guiding hand on this courtroom and that with your mighty outstretched arm you will protect the innocent, give justice to those who have been harmed and mercy to us all. Let truth be heard and wisdom be reflected in the light of your presence here with us today. Amen.

This prayer is a part of the opening of court. It takes Judge Constangy about 30 seconds to deliver it. Judge Constangy always says the same prayer, with the same introduction, each morning at the opening of court, whether civil or criminal, except when he presides over civil commitment hearings, which are conducted in the mental health clinic.

The bailiff re-opens court in the afternoon with his customary cry. Judge Constangy does not recite his prayer when court is reopened in the afternoon.

Since becoming a judge, Judge Constangy has presided most frequently over mis-

demeanor criminal cases. Defendants in custody are not brought into the courtroom until after the prayer has been completed. Judge Constangy has never held juvenile court.

The prayer was composed by Judge Constangy. He did not consult any prayer books or other religious writings in drafting it, nor did he consult members of the clergy or other individuals or religious institutions.

Plaintiff North Carolina Civil Liberties Union is a non-profit North Carolina corporation which holds itself out as being devoted to securing and defending the rights, privileges and immunities guaranteed by the United States Constitution and the Constitution of North Carolina, and as having a special interest in the rights protected by the First Amendment. A number of its members live in Charlotte and may be subject to being ordered to attend Judge Constangy's courtroom as witnesses or defendants in the same manner as any other citizens or group of citizens.

The individual plaintiffs are attorneys licensed to practice in Judge Constangy's court. Each individual plaintiff has been present for at least one recitation of Judge Constangy's court-opening prayer.

Immediately before saying his prayer, Judge Constangy always says, "Let us pause for a moment of prayer." No other verbal or written announcement is made that the court will be opened with a prayer. Judge Constangy would be willing to announce that he will say a prayer and to allow anyone in the courtroom who wishes to leave the room an opportunity to do so.

Judge Constangy intends to continue indefinitely his practice of opening each session of court with a prayer.

## CONCLUSIONS OF LAW

The "Establishment Clause" of the United States Constitution, First Amendment, Section 1, adopted in 1791, says:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

The Supreme Court long ago, in *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940), held that the Establishment Clause (though it is phrased as a restriction on "Congress") also restricts action by *state* governments and the servants, agents and agencies, of *state* governments.

That includes judges.

*State and federal.*

Judge Constangy, as a state judge, is required by the United States Constitution to "make no law" "respecting an establishment of religion."

The Supreme Court first confronted official prayer in *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). In that case, the Court held that the practice of beginning classes in the New York public schools with a short, non-denominational prayer was unconstitutional. The Court found irrelevant to Establishment Clause analysis the facts that the prayer was non-denominational and that students were free to remain silent or to leave the room during its recitation.

Perhaps the most important of the Supreme Court's Establishment Clause decisions is *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In that case, the Court formulated a three-part test that has been applied, almost without exception,[1] to subsequent Establishment Clause cases brought before the Court:

"First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.' "

403 U.S. at 612–13, 91 S.Ct. at 2111 (citations omitted).

---

**1.** One notable exception is *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), discussed *infra.*

A practice that fails any part of this three-part test is unconstitutional. *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

Judge Constangy's prayer fails all three parts of the test.

Judge Constangy states that his prayer has the secular purposes of providing a solemn and dignified atmosphere and of reminding those in attendance of the court's search for truth and justice. However, Judge Constangy recites his prayer only in the morning when he opens court, and not when he re-opens court in the afternoon. This practice demonstrates that the solemnity and dignity of the courtroom are not dependent upon the recitation of an opening prayer.

Prayer, whether public or private, is a religious act. The evidence shows that the purpose of Judge Constangy's prayer is religious, rather than secular.

Judge Constangy's prayer also "advances" religion. When he recites the prayer, Judge Constangy presides over his courtroom, literally robed in the authority of the State. Such an official endorsement of religion violates the second prong of the *Lemon* test.

Finally, Judge Constangy's prayer is an "excessive government entanglement with religion." As the Court explained in *Larkin v. Grendel's Den*, 459 U.S. 116, 126, 103 S.Ct. 505, 511, 74 L.Ed.2d 297 (1982), "the core rationale underlying the Establishment Clause is preventing 'a fusion of governmental and religious functions.'" When Judge Constangy recites his prayer, those functions are impermissibly fused.

In *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court upheld the Nebraska State Legislature's practice of having a chaplain, paid by the State, recite a prayer at the beginning of each legislative session. Central to its holding was the Court's finding that:

"Clearly the men who wrote the First Amendment Religion Clauses did not view paid legislative chaplains and opening prayers as a violation of that Amendment, for the practice of opening sessions with prayer has continued without interruption ever since that early session of Congress."

*Id.* at 788, 103 S.Ct. at 3334.

The Court held that, "[i]n light of the unambiguous and unbroken history of more than 200 years," *id.* at 792, 103 S.Ct. at 3336, the *legislature's* opening prayer did not violate the Establishment Clause.

There is no evidence in this case of any such 200 year-old "unambiguous and unbroken history." The ceremonial practice of opening *courts* with the phrase, "God save the United States and this honorable court," like the motto "In God We Trust" on coins, is not comparable to Judge Constangy's prayer. Such perfunctory acknowledgements of religion have been referred to as aspects of a "ceremonial deism," and "have lost through rote repetition any significant religious content." *See Lynch v. Donnelly*, 465 U.S. 668, 716, 104 S.Ct. 1355, 1381–82, 79 L.Ed.2d 604 (1984) (Brennan, J., dissenting); *see also id.* at 693, 104 S.Ct. at 1369 (O'Connor, J., concurring).

Presumably because of the overwhelming historical evidence presented in *Marsh v. Chambers*, the *Marsh* Court did not apply the *Lemon* test. Because there is no comparable evidence in this case, the *Lemon* test applies. As is demonstrated *supra*, Judge Constangy's prayer cannot pass the *Lemon* test.

Judge Constangy's prayer, uttered in good faith to an audience that may include people of different faiths (or no admitted faith at all) is an obvious violation of the First Amendment.

It tends to promote the *"establishment"* of religion, which wise men two centuries ago said that government should not do.

If the practice is approved over objection as a routine courtroom procedure, it will inescapably lead us into competition (probably violent if history is a guide) among conscientious persons over the choice of people to pray, the form of the prayer, and the Deity to whom the prayer is addressed.

These are fair questions for full and open debate among persons of all faiths.

They are not, in our land since the First Amendment, questions that the *government*, state or federal, should lay hands on.

When a judge prays aloud in his courtroom, to an audience which is overwhelmingly captive, he promotes the "establishment of religion." He also skews the search for truth, and truth should be the prime, day-to-day aim of all judges and jurors, be they federal or state.

I, myself, lay claim to a religious faith and practice. It is Scotch Presbyterian by label and, like Judge Constangy's, is Christian in origin and tradition. It is a faith in God Almighty as Father of us all and as Mentor and Protector and Law Giver of us all, regardless of our race, color or creed. It fosters a belief that people serve God by fair and generous dealings in everyday life with all people among whom we live.

As a *faith* (apart from church structure and organization), it probably does not differ in any material way from Judge Constangy's Catholic faith.

But it does not depend upon nor call upon the authority of local government, or its agents, for its protection and survival.

That protection and survival are afforded by the First Amendment to the Constitution of the United States.

With all due respect for Judge Constangy's sincerity, I must conclude that his prayer in the courtroom is contrary to the law of the land.

Plaintiffs will prepare an appropriate order.