Attorney General Edmondson has asked me to respond to your letter requesting an opinion addressing, in effect, the following question:
 Would the implementation of Christian based religious counseling by the Oklahoma State Department of Health as a part of its HIV/STD programs violate the First Amendment of the United States Constitution?
Because the specific question you pose is to some extent fact based, we respond by way of an informal letter, which is not an official opinion of the Attorney General but rather is solely the opinion of undersigned counsel reached after careful research and analysis of the question raised.
According to your letter, you are considering proposing that the Oklahoma State Department of Health include as a part of its HIV/STD programs counseling by religious organizations to encourage lifestyle changes. The materials you enclose with your letter describe the counseling you have in mind as counseling conducted by religious organizations which attempt to discourage certain lifestyles through Christian based religious indoctrination.
The answer to your question turns upon an analysis of whether this kind of state sponsored counseling would violate the Establishment Clause of the First Amendment to the United States Constitution. The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion." This clause is made applicable to the states by virtue of the Fourteenth Amendment. Abington School District v. Schempp, 374 U.S. 203, 215-216
(1963). Under the Supremacy Clause of the United States Constitution, state courts and officials are bound by federal constitutional provisions to follow federal law:
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the find; and the Judges in every State shall be bound thereby.
U.S. Const. art. VI, cl. 2. Indeed, the Oklahoma Supreme Court has specifically acknowledged that it is bound by the meaning of the Constitution as interpreted by the United States Supreme Court. Sipuel v. Board of Regents of the University of Oklahoma, 180 P.2d 135, 136 (Okla. 1947).
The United States Supreme Court has interpreted the Establishment Clause on numerous occasions. In Walz v. Tax Comm'n of City of New York. N.Y., 397 U.S. 664 (1970), the Court noted that the primary purpose of the Establishment Clause is to set boundaries to avoid excessive entanglement between government and religion. While the Court has recognized at some limited and incidental entanglement between church and state is inevitable, and thus absolute separation is not required, Larkin v. Grendel's Den. Inc.,459 U.S. 116, 123 (1982), the state must, nevertheless, be completely neutral toward religion. Schempp, 374 U.S. 203
(1963).
In Lemon v. Kurtzman, 403 U.S. 602 (1971), the Court established a three part standard for determining whether a state's actions violate the Establishment Clause. In Lemon, the Court held unconstitutional a state statute that provided public money to supplement the salaries of teachers of secular subjects at religious schools.
The three part Lemon standard has since applied by the Court in all but one of the Establishment Clause cases it has decided. Lee v. Weisman, U.S. ___, 112 S.Ct. 2649, 2663, n. 4 (1992) (Blackmun, J., concurring). Under Lemon standard, in order to satisfy the proscriptions of the Establishment Clause, a governmental practice must (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive entanglement between government and religion. Lemon,403 U.S. 602, 612-613.
Under the first part of the test enunciated in Lemon, a governmental practice violates the Establishment Clause if it does not have a clearly secular purpose. Id. at 612-13. The apparent purpose of the program, decreasing the spread of sexually transmitted diseases, is plainly secular because it discourages certain lifestyle choices that might increase the spread of sexually transmitted diseases.
Under the second Lemon prong, the counseling must have a primary effect that neither advances nor inhibits religion. Id. at 612-13. You provided literature published by various religious counseling groups that could implement the counseling you propose.
The literature indicates that the common goal of the organizations is to discourage certain individual's lifestyles through religious indoctrination.
The effect of counseling by such groups would be the advancement of religion. The second Lemon prong would be violated even if the groups agreed to remove religious teachings from the counseling. In Lemon, the Supreme Court disallowed public reimbursement to teachers in parochial schools who taught secular courses. Id. at 619. The Court reasoned that a dedicated religious person operating in a program affiliated with her faith would experience extreme difficulty remaining religiously neutral. Likewise, counselors from religious organizations working in a program Sponsored by the Oklahoma State Department of Health would likely find religious neutrality difficult during the course of a counseling session designed to encourage a person to make a lifestyle change.
Under the third prong, the Lemon Court examined three factors to determine whether the government action fostered excessive entanglement between government and religion. The Court evaluated (1) the character and purpose of the organizations benefitted; (2) the nature of aid the state provides; and (3) the resulting relationship between the state and the religious organization. Id. at 615.
By definition, a "religious organization" has a religious character. The literature you provided indicates, as well, a religious purpose. The nature of aid the state would provide to the organizations is not necessarily financial. Rather, the state might merely provide the groups access to those clients of state HIV/STD programs who maintain certain lifestyles. Providing access to these clients would aid the religious organizations in their missions. State provision of this aid might foster excessive entanglement between government and religion.
The relationship which would result between the state and the religious organizations is unclear. At the very least, it appears an administrative relationship would occur in which scheduling and client participation would be coordinated. Any assistance provided by the state would likely foster excessive entanglement. See McLean v. Arkansas Board of Education, 529 F.Supp. 1255 (1982) (holding that Establishment Clause prohibits a private group from using the programs of state government to "foist its religious beliefs on others.") Thus, the proposed program would probably violate the third prong of the Lemon test.
Therefore, it is my opinion that the implementation of a state sponsored HIV/STD program you described that includes counseling by religious organizations that is designed to discourage certain lifestyle choices through religious indoctrination would violate the Establishment Clause of the United States Constitution.
("Aids"/Amend 1)
(Brett Robinson)