*722 MOSK, J.
I dissent.
In analyzing whether Government Code sections 25373 and 37361 impermissibly grant preferential treatment to religious organizations, both the majority and dissenting opinions herein give short shrift to state authority. In my view, state law and state constitutional principles should be our first and sole referent in this matter. “[A]s the highest court of this state, we are independently responsible for safeguarding the rights of our citizens. State courts are, and should be, the first line of defense for individual liberties in the federal system. It is unnecessary to rest our decision on federal authority when the California Constitution alone provides an independent and adequate state constitutional basis on which to decide.” (Sands v. Morongo Unified School Dist. (1991) 53 Cal.3d 863, 906 [281 Cal.Rptr. 34, 809 P.2d 809] (cone. opn. of Mosk, J.).)
I conclude that Government Code sections 25373 and 37361, which confer on religious organizations a unilateral right to exempt themselves from historic landmark preservation laws applicable to all other property owners, cannot be reconciled with the strict neutrality required by article I, section 4, and article XVI, section 5 of the California Constitution. On that basis, I would reverse the judgment.
I
Article I, section 4 of the California Constitution (hereafter article I, section 4) provides, “Free exercise and enjoyment of religion without discrimination or preference are guaranteed. . . . The Legislature shall make no law respecting an establishment of religion.”
The majority short-circuit any review under the state constitutional provision. With regard to the establishment clause, they assert that because the exemption under Government Code sections 25373 and 37361 does not “run afoul of the establishment clause of the First Amendment” of the United States Constitution under the test articulated in Lemon v. Kurtzman (1971) 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745], it necessarily also satisfies the requirements of the establishment clause under article I, section 4 of the California Constitution. (Maj. opn., ante, at p. 718.) Likewise, with regard to the preference clause, they conclude that because there was no federal constitutional bar to the exemption for religious organizations, “it follows” that the statutes also satisfy the preference clause under our state constitutional provision. (Maj. opn, ante, at p. 719.)
I strongly disagree that the federal Constitution dictates either the analysis or result in this case.
*723 Our state constitutional law is analytically distinct and more protective of the principle of church-state separation than the First Amendment. “It is undisputed that provisions of the California Constitution are not dependent for their meaning on the federal Constitution. [Citation.] . . . [T]he different history of our charter justifies the difference in interpretation.” (Sands v. Morongo Unified School Dist, supra, 53 Cal.3d at p. 907 (cone. opn. of Mosk, J.).) Thus, although federal cases concerning the First Amendment may be illustrative in interpreting our state constitutional provision, they are not dispositive.
Specifically, while I agree that the test under Lemon v. Kurtzman, supra, 403 U.S. 602, offers guidance for analyzing the exemption herein under our state establishment clause, I disagree that we are exclusively bound by any particular application of that test by federal authority. To be sure, as the majority observe, the state establishment clause was not added until 1974; but the voters did not thereby indicate their intention that our courts strictly adhere to the construction placed on the federal establishment clause by the United States Supreme Court, as the majority assert. On the contrary, in the same election, the voters also added an express declaration of state constitutional independence in article I, section 24, which provides that “[rjights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution.” “[I]t is clear from the drafters’ debates that article I, section 24, of the state Constitution (‘Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution’) was specifically intended to allow our state courts to give greater scope to the California Constitution than that required by the federal high court to similar, or even identical, language of the United States Constitution.” (Sands v. Morongo Unified School Dist, supra, 53 Cal.3d at p. 910, fn. 3 (cone. opn. of Mosk, J.).)
With regard to the preference clause under article I, section 4—which “is without parallel in the federal Constitution” (Sands v. Morongo Unified School Dist, supra, 53 Cal.3d at p. 910 (cone. opn. of Mosk, J.))—our independence from federal precedent is still more complete. “ ‘It would be difficult to imagine a more sweeping statement of the principle of governmental impartiality in the field of religion.’ . . . [U]nder article I, section, 4, ‘Preference thus is forbidden even when there is no discrimination. The current interpretations of the United States Constitution may not be that comprehensive.’ ” (Id. at pp. 910-911.)
*724 In my view, the exemption under Government Code sections 25373 and 37361 for religious organizations clearly violates both the establishment and the preference clauses of article I, section 4.[1]
To withstand scrutiny under our state establishment clause the statute must be neutral toward religion: it must have a secular legislative purpose, its principal or primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive governmental entanglement with religion. (Lemon v. Kurtzman, supra, 403 U.S. at pp. 612-613 [91 S.Ct. at p. 2111].)
State action with regard to religion must satisfy all of the foregoing requirements. The provisions at issue herein satisfy none. They impermissibly single out religious organizations for a special exemption from generally applicable historic landmark preservation laws at the expense of other property owners and to the detriment of the local community’s ability to preserve its history and character. And they do so by improperly delegating traditional secular governmental powers to the religious organizations themselves.
First, the statutes do not serve a proper secular purpose. The majority effectively concede that there is no substantial evidentiary basis for concluding that the statutes were necessary to alleviate any actual or significant burdens on religion; they assert instead that the Legislature could reasonably have concluded that the provisions reduce a potential burden on the free exercise of religion. But it is not enough that local historic landmark preservation laws might in some conceivable situation impose some burden on a religious organization, however insignificant and however unrelated to a religious mission. The majority’s flawed approach could be used to justify exempting religious organizations from any neutral law of general applicability. Nor does it find support in the state or federal case law. The sole authority they cite for the proposition, Employment Div., Ore. Dept, of Human Res. v. Smith (1990) 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876], is simply not in point. Until this case, no court has upheld a legislative enactment challenged under the establishment clause on the basis of a merely theoretical burden.
Second, Government Code sections 25373 and 37361 have the primary effect of advancing religion. They extend to sectarian organizations a substantial economic advantage over secular owners of historic landmark properties. The majority assert that the statutes merely “permit use of the *725 property as it was before landmark designation,” as the majority contend. (Maj. opn., ante, at p. 714.) But by permitting only religious organizations to avoid the effect of historic landmark preservation laws imposed generally on all property owners, the statutes do more than simply preserve the status quo ante. Under the broad provisions of the statute, a church or other religious organization may exempt itself from landmark regulations for purely economic reasons—including to modify the site solely for financial advantage unrelated to its religious mission—while a secular organization with indistinguishable property may not. Such a valuable privilege clearly amounts to an impermissible preference for religion.
Third, Government Code sections 25373 and 37361 excessively entangle church and state. They delegate to religious organizations—and religious organizations only—the power to determine their own eligibility for an exemption from historic landmark preservation laws, with no requirement of review by a neutral governmental arbiter. The statutes thus substitute the unilateral power of a church for the reasoned decisionmaking of a public legislative body, creating a danger of “ ‘[pjolitical fragmentation and divisiveness on religious lines.’ ” (Larkin v. Grendel’s Den, Inc. (1982) 459 U.S. 116, 127 [103 S.Ct. 505, 512, 74 L.Ed.2d 297].) It is indefensible for the majority to attempt to justify this ceding of governmental authority to a religious organization on the basis that there is “no opportunity for favoritism by the religious entity.” (Maj. opn., ante, at p. 716.)
In addition, article I, section 4 includes a broad guarantee of separation of church and state: “Free exercise . . . without discrimination or preference . . . .” (Italics added.) Under the section, “[preference thus is forbidden even when there is no discrimination.” (Fox v. City of Los Angeles (1978) 22 Cal.3d 792, 796 [150 Cal.Rptr. 867, 587 P.2d 663].) It prevents government from according any advantage to religion in California. “The relevant inquiry is whether government has granted a benefit to a religion or religion in general that is not granted to society at large. Once government bestows that differential benefit on religion, it has acted unconstitutionally in this state.” (Sands v. Morongo Unified School Dist., supra, 53 Cal.3d at pp. 911-912, fn. omitted (cone. opn. of Mosk, J.).) The statutes herein bestow just such an impermissible differential benefit by allowing religious organizations to exercise control over their buildings and land, including for purely economic purposes, while subjecting secular organizations or individuals owning identical property to the financial burdens and developmental restrictions inherent in historic landmark designation.
*726 II
Article XVI, section 5 of the California Constitution (hereafter article XVI, section 5) prohibits government from “grant[ing] anything to or in aid of any religious sect, church, creed, or sectarian purpose.”
As we have previously explained, in recounting the history of article XVI, section 5: “An examination of the debates of the constitutional convention which drafted the Constitution of 1879 indicates that the provision was intended to insure the separation of church and state and to guarantee that the power, authority, and financial resources of the government shall never be devoted to the advancement or support of religious or sectarian purposes.” (California Educational Facilities Authority v. Priest (1974) 12 Cal.3d 593, 604 [116 Cal.Rptr. 361, 526 P.2d 513].) “Its terms forbid granting ‘anything’ to or in aid of sectarian purposes .... The section thus forbids more than the appropriation or payment of public funds to support sectarian institutions. It bans any official involvement, whatever its form, which has the direct, immediate, and substantial effect of promoting religious purposes.” (Id. at p. 605, fn. 12.) It represents “the definitive statement of the principle of government impartiality in the field of religion.” (37 Ops.Cal.Atty.Gen. 105, 107 (1961).)
The majority wrongly conclude that Government Code sections 25373 and 37361 survive review under article XVI, section 5, again on the ground that the exemption for religious organizations “simply leaves the property in the status it otherwise occupied.” (Maj. opn., ante, at p. 721.) Again, there is a glaring flaw in the majority’s analysis: By not also leaving comparable property owned by nonsectarian organizations in the status it otherwise occupied, the statutes provide a direct and palpable benefit for religious organizations, at the expense of the community at large. The statutes are not religiously neutral: religious organizations alone may be able to avoid the economic burdens and developmental restrictions imposed by historic landmark preservation laws. Thus, a church or other sectarian entity can, if it chooses, destroy a historic building for the purpose of erecting an office building simply for financial advantage. But a secular nonprofit organization or an individual owner would be required to maintain the same building no matter how great its potential for development.
III
This is an easy case. Under Government Code sections 25373 and 37361, the Legislature has conferred on religious organizations a governmental power that is not enjoyed by any other property owners. Such favoritism *727 toward religion is prohibited under our state constitutional provisions forbidding the establishment of religion (art. I, § 4), the preference for religion (ibid.), and aid to religion (art. XVI, § 5). The statutes should be held invalid.
For these reasons, I dissent.

Although I believe that we should review Government Code sections 25373 and 37361 solely under the state constitutional provisions, I note my disagreement with the majority’s federal constitutional analysis. In my view, for the reasons stated in the text, the statutes fail to survive scrutiny under Lemon v. Kurtzman, supra, 403 U.S. 602.