**Rachel MATHER, Plaintiff,**

v.

**VILLAGE OF MUNDELEIN, Defendant.**

**No. 87 C 10671.**

United States District Court, N.D. Illinois, E.D.

Nov. 9, 1988.

Harold C. Hirshman, Sonnenschein Carlin Nath & Rosenthal, Robert B. Millner, Jon G. Furlow, Sylvia Neil, American Jewish Congress, Chicago, Ill., for plaintiff.

Charles F. Marino, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

We are asked to determine whether a village maintained holiday display exhibited on the front lawn of the Village Hall violates the Establishment Clause of the U.S. Constitution because it includes a depiction of the nativity scene. Under the law of this and other circuits, we conclude that the placement of the creche in front of the Village Hall suggests the alliance of church and state and therefore violates the Establishment Clause.

Each December for the last twenty-five years the Village of Mundelein has exhibited a holiday display on the front lawn of the Village Hall. The Village Hall is located directly across from the United States Post Office in Mundelein. Until recently the display included only, a creche, multicolored Christmas lights spread over the evergreens in front of the Hall, a large wreath over the main entrance and a banner in the main window stating "Seasons Greetings" or "Happy Holidays." The nativity scene consists of seven plastic figures ranging from 32—48 inches high, including the Infant Jesus, the Virgin Mary, Joseph and Magi, inside a large lighted manger.

In early December 1987, the Mayor of Mundelein, Colin L. McRae, had a Christmas tree added to the outdoor display. Shortly thereafter, on December 11, 1987, the Mayor received a letter from Sylvia Neil, Executive Director/Legal Counsel of the American Jewish Congress (AJC), stat-

ing that the AJC had been contacted by some Mundelein citizens expressing their concern about the placement of the nativity scene in front of the Village Hall. The letter recommended that the creche continue to be displayed publicly but that it should be relocated to private property. A week later, at the direction of Mayor McRae, several items were purchased and added to the display: four carolers, four carriage lights, two soldiers, a snowman, a Santa and sleigh with reindeer and a wreath. These plastic figures range from 36—60 inches high. A banner was acquired from the Mundelein Police Department and another Santa was moved from inside the Village Hall to the front lawn.

The Mayor instructed several Village employees to add the new decorations to the display on the front lawn as tastefully as possible. A Santa was placed to the west side of the creche and a snowman on the east. The Christmas tree was left close to the center of the display, but nearer to the street. The Santa in the sleigh and reindeers, the carolers, the soldiers and the carriage lights were spread out on the east side of the creche. The light strings were left on the trees. A large wreath was hung over the main door of the Village Hall and a banner was displayed on the front of the building.

The cost to the Village of maintaining the exhibit is minimal. The Christmas tree was purchased by the Village in 1987 for $45.00. The other items obtained in 1987 were purchased for $341.99. The Village has no records regarding how the creche, Santa Claus and strings of lights were acquired. The Village estimates it takes 24 hours for Village employees to assemble and disassemble the display, in 1987 the total cost of labor was approximately $306.92. The display is lit during evening hours with two 100–watt light bulbs, two 75–watt light bulbs and 15 strings of lights. The lighting results in no additional cost because the Village Hall receives electricity without charge.

On December 21, 1987, at the meeting of the Village Board of Trustees following receipt of the AJC letter, Mr. Marino, the attorney for the Village, submitted to the Board a report on the law regarding the constitutionality of creche displays. The report emphasized the importance of the creche being part of a larger display which included other traditional symbols of Christmas. At this meeting the Board passed a motion to include the more recently acquired items in the holiday display and took the attorney's report under advisement.

On January 23, 1988 the Village Board's Committee of the Whole held a public hearing on the holiday display. The Village attorney, several Mundelein residents (including the plaintiff in this action), Sylvia Neil, plaintiff's attorney and representative for the AJC, a spokesman for the American Atheists, as well as other interested parties were present. At the conclusion of the meeting, the Mayor directed the staff to prepare a report for further consideration by the Board of Trustees. Such a report was prepared in which various sites on the busiest streets in Mundelein were evaluated as alternate locations for the holiday display.

After reviewing the report the Board of Trustees determined that the display should remain on the lawn of the Village Hall, the stated reasons for this decision being, its high visibility, size, safety from vandalism and the availability of electricity. On April 12, 1985 the Village Board passed Ordinance No. 85–4–15, providing that the Village maintain a holiday display in the front yard of the Village Hall including at least these traditional symbols of Christmas: a Christmas tree with lights, a banner stating "Seasons Greetings", a creche, a Santa Claus, a sleigh and reindeer, snowman, four carolers, two soldiers, four carriage lights, a wreath and lights. The Ordinance provides that a sign posted close to the display contain an excerpt from the Encyclopedia Britannica which gives a brief history of Christmas and the following disclaimer in letters at least six inches high:

> The Village of Mundelein has maintained a holiday display since the early 1960s, intended to depict the traditional symbols of Christmas and it is not meant to con-

vey any government endorsement of religion.

In December 1987, plaintiff, Rachel Mather, a resident of the Village of Mundelein, observed the holiday display in front of the Village Hall. Ms. Mather testified that the creche in front of the Village Hall angers and upsets her and that the nativity scene gives her a sense of inferiority. She feels that by the display the Village of Mundelein endorses Christianity, gives no credence to her religion and views her religion as far less important than the Christian religion. Ms. Mather said she has difficulty explaining to her four year old son that she is raising in the Jewish faith why the creche is located in front of the government building. Ms. Mather acknowledged that she has seen creches displayed on holiday cards, paintings, private property, churches and perhaps in retail stores without encountering the same emotional response. Ms. Mather states that it is the display in front of the Village Hall which implies the Village's endorsement of religion which upsets her. Although Ms. Mather avoids the Village Hall as often as possible during the Christmas season, it is impossible for her to ignore the display completely because she frequently transacts business at the post office across the street from the Village Hall.

At trial the plaintiff introduced two witnesses to support and explain her reaction to Village of Mundelein's creche. Gary Schlesinger, currently a resident of the neighboring Village of Libertyville, but a resident of Mundelein from 1973 to 1977, testified that when he saw the creche in front of the Village Hall in December 1987 he had a strong emotional reaction. He felt crushed and devastated. Another witness, Maris Rodgon, a psychologist, attorney and member of the AJC, had not personally viewed Mundelein's holiday display, and her opinion was based upon photographs of it. Dr. Rodgon testified that the use of the Village Hall as a location for the display of the creche conveys the message that the Village endorses the Christian religion.

Dr. Rodgon acknowledged she had never treated either adult or child for an adverse psychological effect received from a creche, nor did she know of any literature which deals specifically with the psychological impact of creches or religious symbols of any kind. According to Dr. Rodgon, however, the creche is a symbol of the Christian religion and the Village Hall is a symbol of government, and such visual symbols have a very powerful immediate and long-lasting impact on the viewer. Dr. Rodgon added that these visual symbols will have a longer-lasting and deeper effect on children. Furthermore she testified the impact is not negated or diminished by other objects in the holiday display, the written message from the Encyclopedia Britannica or the disclaimer required by the Village Ordinance. Dr. Rodgon explained that even if the viewer understood the writings, they are more analytical and their impact is not as immediate as that of the creche and Village Hall.

Plaintiff Rachel Mather filed this complaint against the defendant, Village of Mundelein, after the Board of Trustees failed to move the creche to private grounds and passed the Ordinance providing for the continued display of the nativity scene in front of the Village Hall. Plaintiff contends that by exhibiting the creche it is the purpose of the Village of Mundelein to advance religion and convey the message that the Village endorses the Christian religion. On behalf of the defendant Mayor McRae testified that the Village Board did not intend to deliver any message of a religious nature, but that the display conveyed to him a holiday, a season of peace, good feelings and celebration—a season of good will toward all people and not an endorsement of religion of any kind.

## I.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." It is generally recognized that the drafters' concerns were to prevent the establishment of a national church and forbid a national preference of one Christian sect over another. Contemporary interpretation of the Establishment

Clause by the courts, however, has derived far broader principles from the Establishment Clause. Roughly stated the Clause requires a separation of religious and governmental affairs. But the Supreme Court has not adopted an absolutist view of the matter:

> In every Establishment Clause case we must reconcile the inescapable tension between the objective of preventing unnecessary intrusion of either the Church or the State upon the other, and the reality that, as the Court has so often noted, total separation of the two is not possible. *Lynch v. Donnelly*, 465 U.S. 668, 672, 104 S.Ct. 1355, 1359, 79 L.Ed.2d 604.

Each Establishment Clause case calls for line-drawing, there is no fixed *per se* rule that can be drawn. *Lynch v. Donnelly*, 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984). The government may acknowledge religion and our religious heritage, but the government may neither favor one religion over another nor favor religion over non-religion. *Epperson v. Arkansas*, 393 U.S. 97, 103–04, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). Thus, over time the Establishment Clause has come to mean government neutrality.

Generally the Supreme Court will rely on the test developed in *Lemon v. Kurtzman* to determine if the challenged government conduct is permissible under the Establishment Clause. 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The three-part *Lemon* test requires that a government action have (1) a secular legislative purpose, (2) that its principal or primary effect neither advance nor inhibit religion and (3) not foster an excessive government entanglement with religion. *Id. See also Bowen v. Kendrick*, —— U.S. ——, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988); *Lynch v. Donnelly*, 465 U.S. at 679, 104 S.Ct. at 1362. Thus, we must determine whether the creche display in Mundelein violates any part of this test.

## II.

### A.

The Supreme Court found that the *Lemon* criteria were not violated when a government owned Christmas display, including a nativity scene was challenged as a First Amendment violation in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355. In *Lynch* a display in Pawtucket, Rhode Island, was situated in a park owned by a nonprofit organization and located in the heart of the shopping district. The display included, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, candy-stripped poles, a Christmas tree, carolers, cut-out figures of characters such as a clown, an elephant and a teddy bear, hundreds of lights, a large banner that read "Seasons Greetings" and the creche at issue. *Id.* at 671, 104 S.Ct. at 1358.

The Supreme Court acknowledged that the creche is a religious symbol identified with a particular religious faith. *Id.* at 685, 465 S.Ct. at 1365. The Chief Justice indicated, however, the appropriate inquiry was not whether a creche is in the abstract a religious symbol, but whether in the context of the entire display at issue and the Christmas season, could the display be considered to advance religion. According to the Chief Justice's opinion for the Court the Pawtucket display did have a secular purpose—the celebration of the Christmas season, which has long been recognized as a national holiday, with traditional symbols. *Id.* at 681, 104 S.Ct. at 1363. The Court also rejected the district court's finding that the primary effect of including the creche in the display was to favor religion in general and the Christian faith in particular. The Chief Justice explained the benefits conferred on the Christian faith were "indirect, remote, and incidental" when compared to other governmental action upheld by the Court. *Id.* at 681–82, 104 S.Ct. at 1363–64. The Court continued that although it could be argued that the display of the creche conveyed the message of an alliance of government with Christianity, the benefit to religion was "no more an advancement of religion than the Congressional and Executive recognition of the origins of the holiday itself as 'Christ's Mass' or the exhibition of literally hundreds of

religious paintings in government supported museums." *Id.* at 682, 104 S.Ct. 1364.

Finally the Supreme Court held, the third prong of the *Lemon* test, concerning whether a particular government conduct fostered an excessive entanglement of government with religion, was not violated. The Court found no appreciable administrative entanglement between religion and the state resulting from the city's ownership and display of the creche. *Id.* at 684, 104 S.Ct. at 1365.

*Lynch v. Donnelly,* a seminal case with respect to use of religious decoration during the Christmas season, was written so that the holding was closely linked to its facts. Since *Lynch v. Donnelly* several cases have prohibited government association with the display of religious decorations. In *American Civil Liberties Union v. City of Birmingham,* the Court of Appeals for the Sixth Circuit found that a city owned and built creche, maintained at public expense and exhibited on the front lawn of the City Hall violated the First Amendment as it created the impression that the city government endorsed Christianity. *ACLU v. City of Birmingham,* 791 F.2d 1561 (6th Cir.), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). The Sixth Circuit distinguished *Lynch* and emphasized that the creche stood alone and was not included in a larger display of secular symbols, and consequently the display paid tribute solely to the religious origins of Christmas.

In *McCreary v. Stone,* the Second Circuit took a different approach to the question of whether a municipality could refuse a request to display a privately owned creche in a municipal park in the center of the business district. 739 F.2d 716 (2d Cir. 1984), *aff'g without opinion by an equally divided Court,* 471 U.S. 83, 105 S.Ct. 1859,

85 L.Ed.2d 63 (1985). The court examined the case from the perspective of protecting the First Amendment rights of the group applying to display the creche and stated that the proper inquiry was whether the exclusion was necessary to serve a compelling public interest. *Id.* at 723. The court, applying the *Lemon* test, found it did not but remanded the case so that an order could be issued requiring a more prominent sign disclaiming any government involvement in the display.

Recently, in *American Civil Liberties Union v. County of Allegheny,* the Court of Appeals for the Third Circuit found that the placement of holiday displays including a privately owned creche inside the main entrance of the County Court House and a privately owned menorah on the steps of the main entrance to the City–County Building violated the Establishment Clause. 842 F.2d 655 (3rd Cir.1988), *cert. granted,* — U.S. ——, 109 S.Ct. 53, 102 L.Ed.2d 32 (1988).[1] The court found that the juxtaposition of objects, clearly pertaining to a particular religion, with buildings, devoted to core functions of government, had the effect of advancing religion. *Id.* at 662. The court noted that even though the menorah was displayed near a Christmas tree and the creche was not the only holiday decoration in the building, neither the creche nor the menorah "can reasonably be deemed to have been subsumed by a larger display of non-religious items." *Id.*

Our court of appeals has held that a creche displayed inside the city government building "unavoidably fostered the inappropriate identification of the City of Chicago with Christianity, and therefore violated the Establishment Clause." *American Jewish Congress v. City of Chicago,* 827 F.2d 120, 128 (7th Cir.1987). In this case the creche displayed in the Chicago City Hall and Cook County Building was privately owned and constructed. Originally,

---

1. The Supreme Court has agreed to review the constitutionality of the religious decorations in these displays during the October 1988 term. Although this decision may have a bearing on later analysis of religious decorations under the Establishment Clause, we are nonetheless bound by current interpretations and the law in our circuit. It is important to note that the facts

in *County of Allegheny* vary from those in our case. The County of Allegheny and the City of Pittsburgh sponsored displays which included religious decorations significant to different religions and therefore may satisfy the second prong of the *Lemon* test because a particular belief does not appear to be favored by government.

it had been donated to the city, but after earlier litigation it was reconveyed to the donor. 827 F.2d at 123. Besides the creche other Christmas decorations adorned the City–County Building lobby, including eight Christmas wreaths, a decorated Christmas tree, a mechanical Santa Claus, accompanied by reindeer and a sleigh, a depository for donations to the "Share-it" program and a banner. Another Christmas tree and a snowman were erected in the Daley Plaza. *Id.* at 122.

Noting that in *Lynch* the Court had stated "every government practice must be judged on its unique circumstances to determine whether it constitutes an endorsement or disapproval of religion", the Seventh Circuit distinguished *Lynch* on two grounds. First, it found that despite the other Christmas decorations inside and outside the City–County Building the creche was self-contained and set apart, thus, the religious symbolism was not subsumed by the secular objects. *Id.* at 125–26. Second, and more significantly, the court of appeals found that because the creche was displayed at the official headquarters of the Chicago government, the case differed substantially from the facts in *Lynch* where the creche was erected in a private park. 827 F.2d at 126. Examining the creche in its overall context, as required by *Lynch*, the Seventh Circuit concluded that the nativity scene was an unequivocal Christian symbol, unlike the other secular objects in the display, so that the effect of the creche in its "unique physical context" was to engender a message of government endorsement of a particular religion which violated the second prong of the *Lemon* test.[2] *Id.*

### B.

After considering the Village of Mundelein's holiday display in its entirety and reviewing the reasoning of the Seventh Circuit in *American Jewish Congress*, we find no principled distinction between the Mundelein display and the unconstitutional display in Chicago's City Hall. Thus, we must conform to precedent and hold that the creche in front of the Village Hall violates the Establishment Clause.

 The first prong of the *Lemon* test requires that the government action at issue have a secular purpose. The secular purpose need not be the sole purpose, merely a primary or principal purpose to satisfy *Lemon. Lynch v. Donnelly*, 465 U.S. at 681, 104 S.Ct. at 1363. Furthermore, the government's purpose need not be unrelated to religion, so long as government maintains neutrality with respect to the religion it acknowledges. *Bishop v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987) (*quoting Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952)). In *American Jewish Congress* the court of appeals found that the City's intention to "take official note of Christmas" by displaying the creche was a legitimate secular purpose and sufficient to satisfy the first part of *Lemon*. 827 F.2d at 127. Similarly, the stated purpose of the Village of Mundelein's ordinance authorizing the holiday display "is the celebration of a public holiday with traditional symbols." Thus, the display in Mundelein does not violate the purpose prong of the *Lemon* test.[3]

---

**2.** The court of appeals held that the City's acknowledged intention "to take official note of Christmas" by erecting the nativity scene in City Hall was not an impermissible purpose under the first prong of *Lemon*. 827 F.2d at 127. As support, the Seventh Circuit cited to Justice O'Connor's concurrence in *Lynch:* "celebration of public holidays, when they have cultural significance even if they also have religious aspects, is a legitimate secular purpose." *Lynch v. Donnelly*, 465 U.S. at 691, 104 S.Ct. at 1369 (O'Connor, J., concurring).

The court of appeals concluded that because the display violated the second prong of *Lemon* they did not need to consider the third prong,

whether the display resulted in excessive entanglement of government and religion. *American Jewish Congress*, 827 F.2d at 128 n. 4.

**3.** The Christmas holiday season has become part of our secular national heritage as well as a season of religious observance. For example, Christians and non-Christians alike stay home from work and may exchange gifts. Certain symbols such as Santa Claus, reindeer and candy canes are symbols of this secular celebration. The Village of Mundelein's Ordinance approving the Christmas display includes the creche as a "traditional symbol" of the national secular Christmas celebration. Both the Supreme Court

The second inquiry under *Lemon* focuses on whether the challenged government action has the effect of advancing or inhibiting religion. The Establishment Clause does not require "callous indifference" to religion. *Zorach v. Clauson,* 343 U.S. at 314, 72 S.Ct. at 684. It does, however, prevent the government from engaging in conduct which favors a particular religion or non-religion. Favoritism does not require an affirmative act by the government, "[T]he mere appearance of a joint exercise of legislative authority by Church and State provides a symbolic benefit to religion in the minds of some by reason of the power conferred." *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 125–26, 103 S.Ct. 505, 511, 74 L.Ed.2d 297 (1982). Thus, an important consideration under the "effects" prong of the *Lemon* test is "whether the symbolic union of church and state effected by the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as endorsement, and by nonadherents as a disapproval, of their individual religious choices." *Grand Rapids School District v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 3226–27, 87 L.Ed.2d 267 (1985). *See also American Jewish Congress,* 827 F.2d at 127.

■ The creche is, without a doubt, a religious symbol, it depicts an event which is one of the most fundamental in Christianity. Despite the undisputed religious significance of the creche, the relevant issue is whether the entire display, considered in its overall context, advances religion. *See Lynch v. Donnelly,* 465 U.S. at 678, 104 S.Ct. at 1362. Thus, the inquiry we must pursue is whether the religious

underpinning of the nativity scene is neutralized in Mundelein's holiday display.

The Village of Mundelein contends that the addition of decorations accepted as traditional symbols of Christmas neutralizes the religious implications of the nativity scene. We cannot agree that the impact of the nativity scene is subsumed by the other decorations. Despite the many other items in the display, the creche remains the predominant feature and a self-contained exhibit. It is the only decoration which combines several figures to depict a historical event. During evening hours special light bulbs illuminate the creche display, emphasizing it as the centerpiece of the exhibit. The haphazard placement of other Christmas decorations around the manger neither detracts from the predominance of the creche nor minimizes its religious implications.[4]

■ Similarly the Village Hall serves as a clear symbol of the Village government's power and authority. According to Mayor McRae's testimony, the Village Hall is "one of the most special places in the Village." It is a special place because the building is devoted to the core functions of the Village governance. For many children the Village Hall is the first introduction to our system of governance. For adults as well as children it may represent the heart of the community.

Just as the creche is unavoidably a Christian symbol, the Village Hall cannot be disassociated from its governmental stature. The Seventh Circuit addressed this symbolic linkage of church and state in *American Jewish Congress:*

The presence of a government in Chicago's City Hall is unavoidable. The

---

and the Seventh Circuit have noted, however, that the creche itself is unequivocally a Christian symbol. *Lynch,* 465 U.S. at 685, 104 S.Ct. at 1365; *American Jewish Congress,* 265 F.2d at 127 (7th Cir.1986). *See also American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 271 (7th Cir.1986). By holding that the Village of Mundelein has a permissible secular purpose under *Lemon,* we do not intend to imply that the creche is considered a "traditional symbol" of a secular Christmas celebration.

**4.** It would be imprudent to find that the constitutionality of a holiday display depends on the details of the physical arrangement of the display, and we do not intend this to be the basis of our finding here. *See American Jewish Congress,* 827 F.2d at 130 (Easterbrook, J., dissenting, warning of the dangers of a rule where constitutionality is determined by the interaction of objects in a particular display). Rather, our opinion is based on the fact that the mere addition of other decorative objects does not subsume the powerful religious symbolism of the nativity scene.

building is devoted to government functions: for example, both city and county government officers are located there, and the City Council holds its meetings there. Because City Hall is so plainly under government ownership and control, every display and activity in the building is implicitly marked with the stamp of government approval. The presence of a nativity scene in the lobby, therefore, inevitably creates a clear and strong impression that the local government tacitly endorses Christianity.

The message of endorsement is equally powerful on the symbolic level. Like the nativity scene itself, City Hall is a symbol—a symbol of government power. The very phrase 'City Hall' is commonly used as a metaphor for government. A creche in City Hall thus brings together church and state in a manner that unmistakably suggests their alliance. The display at issue in this case advanced religion by sending a message to the people of Chicago that the city approved of Christianity.... 827 F.2d at 125 (footnotes omitted).

■ The Village of Mundelein fails to negate the appearance of the alliance of religion and government by posting a sign disclaiming governmental interest and an excerpt from the Encyclopedia Britannica on the history of Christmas. These signs merely serve to draw attention to the religious implications of the display maintained on government property. The Seventh Circuit also rejected the City of Chicago's attempt to neutralize the visual impact of its display with disclaimers and explained:

> The city has attempted to mitigate the impact of this message by posting six disclaimer signs on the display, two on each side, and two on the front. However, the message of government endorsement generated by this display was too pervasive to be mitigated by the presence of disclaimers. As the district court correctly noted, 'a disclaimer of the obvious is of no significant effect.' *American Jewish Congress*, 827 F.2d at 128.

Although the linkage of a religious symbol and a government symbol may neither pose immediate danger nor signify any active government involvement with religion, it necessarily goes beyond mere acknowledgment of religion by fostering the impression that the government favors Christianity.[5] This kind of symbolic linkage must be avoided as it creates a coercive pressure on nonadherents of a belief to conform to the endorsed belief, and this is precisely the attitude the Establishment Clause has been interpreted to protect.[6] In this case it is not merely that plaintiff is offended by the creche on the front lawn of the Village Hall that violates the Establishment Clause. Rather, the Establishment Clause is violated because the recreation of a significant religious event, particular to Christianity, in an exhibit apparently sponsored by the Mundelein government authorities conveys the message that the Village governance aligns itself with citizens

---

5. Plaintiff called Dr. Rodgon, a psychologist and attorney, to testify that the creche and the government building are symbols which have a visual impact on adults and perhaps to an even greater extent on children. Plaintiff, however, failed to explore the specific impact that the juxtaposition of the nativity scene and the Village Hall may have on a viewer. Thus, we do not rely on this witness' testimony to reach our conclusion that the placement of the holiday display results in an unconstitutional symbolic linkage of church and state.

6. Defendant Village of Mundelein questions the credibility of plaintiff Rachel Mather and plaintiff's witness Gary Schlesinger, both of whom were residents of the Mundelein area for several years but have failed to complain about the creche until 1987. Our finding that Rachel Mather was harmed by the display in 1987 and may be harmed in 1988 is sufficient to require a remedy and is not dependent on a finding of prior harm and complaint. Furthermore, as a matter of law we need not determine the depth of Ms. Mather's harm in light of her failure to complain previously to find that she was harmed in 1987. In any event, a failure to complain more promptly is not inconsistent with Ms. Mather's claim that the nativity scene displayed in front of the Village Hall caused her significant psychological harm, accompanied with a feeling of diminished stature in the community.

of one religious belief and thus, necessarily, not others.[7]

■ The Village of Mundelein argues that the best location for the creche is the Village Hall lawn. The Village, however, fails to present any compelling public interest which would be disturbed if the nativity scene were not included in the holiday display in front of the Village Hall or if the entire display were moved to a different, presently less controversial site.[8] Under our law any countervailing interests the government may be pursuing such as acknowledging our cultural heritage or fostering goodwill in the community is outweighed by the harm to plaintiff and others caused by the location of the nativity scene and the resulting violation of the Establishment Clause.

For the foregoing reasons plaintiff's motion to permanently enjoin the Village of Mundelein from displaying a nativity scene on the front lawn of the Village Hall is granted.

7. The Village of Mundelein argues that Ms. Mather should not be offended or psychologically harmed by the nativity scene because she has previously been exposed to nativity scenes and other aspects of the Christian religion. Defendant's argument is based on testimony from Ms. Mather that she has seen creches in front of churches, on private property and perhaps in stores, that her husband was raised a Christian and that her husband exchanges Christmas gifts with his family and secretary. The fact that Ms. Mather has not complained of the private practice of religion is irrelevant. Ms. Mather may only come to court and claim a violation of the Establishment Clause if the nativity scene is on public property. This contention by defendant ignores that the cause of plaintiff's injury may be that the impression that government is favoring a religion other than her own and not the mere sight of the nativity scene.

8. With respect to the location of the holiday display both plaintiff and defendant offer substantial testimony evaluating various possible sites in the Village. Defendant contends on the basis of a report prepared for the Village Board that the Village Hall lawn is the best location. Plaintiff contests defendant's conclusion and points to various discrepancies in the report. We do not address these arguments because regardless of where the best location may be, our opinion concludes that the Village Hall lawn is an inappropriate place for the creche.