Matthew **STARK** and Marcia Neely, Plaintiffs,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 640, Defendants.**

No. 3–94–1597.

United States District Court, D. Minnesota, Third Division.

Aug. 22, 1996.

Timothy E. Branson and Joel Wiginton of Dorsey & Whitney, Minneapolis, MN, and Robert J. Bruno, Burnsville, MN, for Plaintiffs.[1]

Pat A. Cipollone and C. Hunter Wiggins of Kirkland & Ellis, Washington, DC, and Erick G. Kaardal of Trimble & Associates, Ltd., Minneapolis, MN, for Defendants.

Roger A. Peterson of Peterson, Engberg & Peterson, Minneapolis, MN, for Amicus Minnesota Federation of Teachers.

1. Plaintiffs have agreed to dismiss the Brethren, as a party defendant, without prejudice and without costs or attorney's fees.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

In September 1993, the Independent School District No. 640 ("School District") opened an elementary school in Vesta, Minnesota. Matthew Stark and Marcia Neely ("Plaintiffs") are Minnesota state taxpayers who have brought this action seeking to close the Vesta school on the basis that the creation and operation of the Vesta school violates the First Amendment's guarantee against the establishment of religion.

By its motion, Plaintiffs seek a declaration that the creation and operation of the Vesta school violates the Establishment Clause of the First Amendment and Art. 1 § 16 of the Minnesota Constitution, a permanent injunction prohibiting the School District from operating the Vesta school or any other school in conformance with the Brethren's religious objections to the use of computers or other technology and media, a judgment against the School District requiring it to refund the state of Minnesota for all state aid received for the students who attended the Vesta school from 1993 to the present, and a judgment pursuant to 42 U.S.C. § 1988 in favor of Plaintiffs against the School District for Plaintiffs' reasonable attorneys' fees and costs of suit.

The School District moves the Court for an Order granting it summary judgment on the basis that the Vesta school is a public school that is simply accommodating the religious beliefs of the parents of the students that attend the Vesta school.

*Background*

In August 1992, Lloyd Paskewitz ("Paskewitz"), a member of a religious group known as the Brethren, sent a letter to the Superintendent of the School District, George Bates ("Bates").[2] In the letter, Paskewitz told Bates of their[3] concern for the education of children, and of their fear of the rapid development of scientific devices. To address these concerns, Paskewitz suggested to Bates that a school be opened in Vesta, Minnesota. Paskewitz stated they would provide the space free of charge, if the School District provided the teacher and

2. The full text of the letter reads as follows:

> As you know, we are very concerned about the education of our children.
> As believers in the Lord Jesus Christ, and seeking to be governed by Holy Scripture, we find the developing of evil very disturbing. Not that it isn't foretold in Scripture. We feel that 2 Timothy 2 verses 19–21 is our charter for these last days.
> In the main, the teachers have been very cooperative, and we appreciate the provision that has been made for us. We are sympathetic with you in your responsibility, and realize that you have to teach more than you want to, or really have time for. We feel so much is placed upon the school administration that should be taught at home. The 3 R's are a bit neglected. (*Working mothers do have an adverse affect on children*).
> The rapid development of scientific devices is to us a bit frightening in the light of Scripture. We feel that not going in for T.V., Radios, Computers, and Videos will definitely limit our young going into certain fields of work; but we feel that a strong moral fiber built into our young will prove to be sufficient to provide a way through so they have a suitable job and are able to fulfill righteousness. We as parents, I might just say in passing, have proved the goodness of God in this very connection. Now we would like to make a suggestion for grades K through 6. We would provide a

> room at the Vesta School, free of charge, if the District would provide a teacher and books. We would have no objection to it being a public school; but, could we as parents teach the children what they should be taught at home, so the teacher would be free to concentrate on the 3 R's. Our children are very tender, and have been very upset by looking at some movies in the past. They have not been hardened by all the violence and corruption that most children have quite a steady diet of. Therefore, could it be in the charter of the school in Vesta:
> > That no T.V., Radios, Videos, and Computers be used.
> > That a sensible dress code be written up.
> > That no smoking, drinking or swearing be allowed.
> There would be approximately 21 children that I know of that would be interested in K–6. We have also heard there might be others besides the Brethren that would want their children enrolled in Vesta.
> We would require no school transportation, no lunches, and we could supply a helper for school recess.
> The cost to the District would be primarily just the teacher's salary and books.
> Yours truly,
> Mr. Lloyd Paskewitz

3. In the letter, Paskewitz uses the term "we", the inference being he refers to the concerns of the "Brethren."

books.[4] As to the curriculum to be taught, Paskewitz provided the following:

> We would have no objection to it being a public school; but, could we as parents teach the children what they should be taught at home, so the teacher would be free to concentrate on the 3 R's. Our children are very tender, and have been very upset by looking at some movies in the past. They have not been hardened by all the violence and corruption that most children have quite a steady diet of.

Therefore, could it be in the charter of the school in Vesta:

> That no T.V., Radios, Videos, and Computers be used.

> \* \* \* \* \* \*

(Wiginton Aff.Ex. D).

The parties do not dispute that the Brethren consist of a group of people who possess similar beliefs, one such belief being the general objection to the use of technological devices, such as computers, television, films and other modern technology and media. The Brethren also practice separatist and anti-mixing beliefs by not eating meals with persons who do not share their beliefs. Historically, Brethren children attending public school required a separate table at lunchtime to allow the children to practice their separatist beliefs. (Paskewitz Dep. pp. 20–22).

In February 1993, the School District addressed the Paskewitz request at its regular Board Meeting. (Wiginton Aff.Ex. F). Thereafter, the decision was made by the School District to open the school in Vesta for the 1993–1994 school year. On June 1, 1993, Paskewitz wrote Bates stating: "Following is a list of pupils that are planning to attend the Vesta Public School. Two of our children have moved, bringing the total to 19." (Wigginton Aff.Ex. H). In fact, the 19 children that attended the Vesta school dur-

ing the 1993–94 school year were the same 19 children named in Paskewitz' letter.

In connection with the opening of the Vesta school, the School District, Paskewitz and the "Brethren"[5] entered into an Agreement on October 12, 1993, pursuant to which Paskewitz would lease the building to the School District free of charge and all maintenance, security, taxes and insurance would be paid by Paskewitz. (Wiginton Aff.Ex.R). In exchange, the School District agreed to provide a teacher and the necessary classroom materials and establish the curriculum. Section 6 of the Agreement provides "The School District shall, to the extent permitted under applicable law and rules and regulations adopted by the School Board of the School District, limit the use of technology such as television, radio, audio and/or video recordings, computers and movies in the classrooms at the school provided for herein." Sections 8 and 9 also reserve to the School District the right to provide special education or other services to students attending the Vesta School, at the Wabasso Elementary School.[6]

It is undisputed that computers and other technology or media have never been used at the Vesta school since its opening in 1993, while such tools are routinely used at the Wabasso school. And although no confirmation has been made as to the religious affiliations of the students attending the Vesta school, there is evidence supporting the Plaintiffs' assertion that all of the children that have attended the Vesta school since its opening have been Brethren children, *See,* Eichten Dep. p. 35; Rohlik Dep. p. 11; Neely Dep. p. 18; Carlson Dep. pp. 61–62, and there is no evidence that non-Brethren children have attended the Vesta school since 1993. No religion classes are taught at the Vesta school.

The curriculum at the Vesta school also differs from the Wabasso school's curriculum to the extent that classes such as health,

---

4. The School District previously ran a public school in Vesta, Minnesota, but it was closed down in 1984 for economic reasons. Paskewitz owns the building that formerly housed the public school in Vesta, Minnesota.

5. Brethren was apparently misspelled throughout the Agreement.

6. From 1984, when the original Vesta Elementary School closed, up through the 1992–93 school year, all children residing in Vesta attended the Wabasso elementary school.

physical education and music are not offered at the Vesta school. Such classes are, however, available for the Vesta students at the Wabasso school. Furthermore, no lunches are provided at the Vesta school because the Brethren children go to their homes for lunch. The School District emphasizes, however, that if a non-Brethren child were to attend the Vesta school, that a lunch would be provided to that child at the school if so desired.

It is Plaintiffs' assertion that the above facts warrant a finding that the opening and operation of the Vesta school presents a clear violation of the Establishment Clause of the First Amendment.[7] The School District responds that the opening and operation of the Vesta school was entirely within its discretion, and that the facts warrant a finding that the School District was merely accommodating the religious beliefs of parents as it is required to do by law. For the reasons stated herein, the Court finds the decision to open, and the manner of operation of, the Vesta school violates the Establishment Clause.

*Standard for Summary Judgment*

Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). To determine whether genuine issues of material fact exist, a court conducts a two-part inquiry. The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49, 106 S.Ct. at 2510–11.

Before the Court are cross-motions for summary judgment. Neither party is asserting genuine issues of fact exist to preclude summary judgment. Rather, the parties argue the facts as they exist warrant judgment in their favor as a matter of law.

*Establishment Clause*

The Establishment Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion." *McCollum v. Board of Education*, 333 U.S. 203, 210–11, 68 S.Ct. 461, 464–65, 92 L.Ed. 649 (1948).[8] Primarily, the Establishment Clause proscribes the "sponsorship, financial support, and active involvement of the sovereign in religious activity." *School District of the City of Grand Rapids v. Ball*, 473 U.S. 373, 381, 105 S.Ct. 3216, 3221, 87 L.Ed.2d 267 (1985) (internal citations omitted).

The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or

---

7. In a footnote, the School District challenged Plaintiffs' taxpayer standing. The School District argues that to maintain taxpayer standing, Plaintiffs must show there has been a disbursement of tax money in potential violation of constitutional guarantees. The School District then asserts that as Plaintiffs have failed to show an "additional" disbursement of tax money in the creation of the Vesta school, they lack taxpayer standing, relying on *Minnesota Fed'n of Teachers v. Randall*, 891 F.2d 1354, 1358 (8th Cir.1989). The School District has misconstrued the holding in *Minnesota Fed'n of Teachers* for the Eighth

Circuit specifically held it was not necessary to require a taxpayer to establish an increase in their tax burdens, for to do so may lead to an abolition of taxpayer standing altogether. 891 F.2d at 1358. Accordingly, the Court finds Plaintiffs have standing.

8. The Minnesota Constitution also contains an establishment clause. "... [N]or shall ... any preference be given by law to any religious establishment or mode of worship ..." Art. 1, § 16.

small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever from they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation between Church and State.'

*Everson v. Board of Education of Ewing TP et al.,* 330 U.S. 1, 15–16, 67 S.Ct. 504, 511–12, 91 L.Ed. 711 (1947).

■ Not only does the Establishment Clause proscribe the creation of a state religion, it also requires that the government remain neutral to religion. *Parents' Assoc. of P.S. 16 v. Quinones,* 803 F.2d 1235, 1240 (2nd Cir.1986) (*citing, School Dist. of Abington Tp. v. Schempp,* 374 U.S. 203, 215–16, 83 S.Ct. 1560, 1567–68, 10 L.Ed.2d 844 (1963)). "The rationale behind the requirement of neutrality is, in part, that governmental actions giving even the appearance of favoring one religion over another are likely to cause divisiveness and disrespect for government by those who hold contrary beliefs." *Id.*

■ In this case, the Court has been asked to determine whether the opening and operation of the Vesta school violates the Establishment Clause. In making this determination, a court must recognize that the states and local school boards are afforded comprehensive powers and substantial discretion in the operation of public schools. *Edwards v. Aguillard,* 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). *See also Pratt v. Independent School District No. 831,* 670 F.2d 771, 775 (8th Cir.1982). A court must also recognize that it is within the school board's discretion to determine the most appropriate curriculum that is most suitable for the students, as well as the teaching methods and educational tools to be used. *Pratt,* 670 F.2d at 775. However, in exercising its broad discretion, the School District is nonetheless bound by the proscriptions of the Establishment Clause. When circumstances arise that directly and sharply implicate constitutional values, a court must intervene. *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools. Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary. *Edwards,* 482 U.S. at 583–584, 107 S.Ct. at 2577. Thus, in its analysis, this Court must be ever mindful of the particular concerns that arise in the context of the public elementary schools.

■ To assist the Court in determining whether state action violates the Establishment Clause, the United States Supreme Court developed a three part test in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The *Lemon* test provides that to withstand scrutiny, the state action must have a secular purpose, its principle or primary effect must be one that neither advances nor inhibits religion and the state action must not foster an excessive entanglement with religion. *Id.* 403 U.S. at 612–13, 91 S.Ct. at 2111–12. In *Grand Rapids,* the Court noted that it particularly relied on *Lemon* in cases involving religion and schools. 473 U.S. at 383, 105 S.Ct. at 3222.

Today, the status of the *Lemon* test as a general purpose tool for administering the Establishment Clause is in doubt. *Sherman v. Community Consolidated School District 21 of Wheeling Township,* 980 F.2d 437 (7th Cir.1992) (citing U.S. Supreme Court cases in which *Lemon* called into doubt). *See also, Board of Education of Kiryas Joel Village School Dist. v. Grumet,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (O'Connor, J. concurrence calling into doubt use of a single test on a constitutional principle that operates differently in different contexts) (Scalia, J. joined by Rehnquist, C.J., and Thomas, J. dissenting, *Lemon* test should be replaced). Although *Lemon* has not been

expressly overruled, the United States Supreme Court has nonetheless decided many Establishment Clause cases without applying the *Lemon* test. *See e.g., Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) (applying strict scrutiny); *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (finding government involvement with religious activity so pervasive to the point of creating a state-sponsored and state-directed religious activity, that it was unnecessary to apply, or reconsider *Lemon*); *Kiryas Joel,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (statute clearly violated establishment clause because it delegated power to an electorate defined by common religious belief and practice in a manner failing to foreclose religious favoritism). Given the fact that *Lemon* is not uniformly applied, it appears that application of the test is no longer a prerequisite. It is nonetheless available as a guideline "with which to identify instances in which the objectives of the Establishment Clause have been impaired." *Grand Rapids,* 473 U.S. at 383, 105 S.Ct. at 3222. As will be discussed in further detail below, the Court finds that the facts presented by this case provide a clear example of state sponsorship, or the advancement, of a religion which violates the mandates of the First Amendment and will rely on *Lemon* as a guideline only.

*Analysis*

 The main thrust of the School District's argument in support of its decision to open and operate the Vesta school, is that it was accommodating the religious beliefs of the Brethren, as it is required to do by law. While it is true that "the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause," *Corporation of the Presiding Bishop of the Church of Jesus Christ of the Latter-day Saints v. Amos,* 483 U.S. 327, 334, 107 S.Ct. 2862, 2867, 97 L.Ed.2d 273 (1987) (*quoting, Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 144–145, 107 S.Ct. 1046, 1050–51, 94 L.Ed.2d 190 (1987)), it is also true that accommodation is not a principle without limits. *Amos,* 483 U.S. at 334–335, 107 S.Ct. at 2868. At some point, an accommodation may devolve into an unlawful fostering of religion. *Id.*

> The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause. It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith or tends to do so.'

*Lee v. Weisman,* 505 U.S. at 587, 112 S.Ct. at 2655. State action that in and of itself violates the Establishment Clause cannot be saved by labeling it an accommodation.

For example, in *Kiryas Joel,* the Court found that a statute enacted by a special and unusual Act failed the test of neutrality because it aided a particular religion. The Act at issue created a special school district whose boundaries were drawn to include only property owned and inhabited by a particular religious sect, which in turn empowered a locally elected board of education to take action such as opening and closing schools, hiring teachers and prescribing textbooks. The Court found the statute "departs from constitutional command by delegating the State's discretionary authority over public school to a group defined by its character as a religious community, in a legal and historical context that gives not assurance that the governmental power has been or will be exercised neutrally." *Id.* at ——, 114 S.Ct. at 2487.

In its analysis, the Court also recognized the Constitution allows the state to accommodate religious needs. *Id.* at ——, 114 S.Ct. at 2492. The Court referred to two of its prior decisions that upheld accommodations which allowed religious communities and institutions to pursue their beliefs free from governmental interference. *Id.* at ——, 114 S.Ct. at 2493 (*citing Corporation of Presiding Bishop v. Amos, supra,* (government may allow religious organizations to favor their own adherents in hiring, even for secular employment) and *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (government may allow public schools to re-

lease students during the school day to receive off-site religious education)). The Court went on to state, however, that an otherwise unconstitutional delegation of political power to a religious group could never be saved as a religious accommodation. *Id.*

In another accommodation case, the Second Circuit Court of Appeals in *Parents' Assoc. of P.S. 16 v. Quinones,* was asked to issue a preliminary injunction enjoining a school district's plan to provide remedial education classes for students of a parochial school on public school premises. The parochial school at issue in this case, Beth Rachel, is a school which teaches girls of the Hasidic Jewish Faith. The Hasidic faith stresses a strict separation between the Hasidim and the rest of society, and stresses strict separation of males and females within the sect for virtually every activity, including schooling. Yiddish is the only language spoken in the home. To accommodate these strict religious beliefs, the school district proposed to provide remedial education to Beth Rachel students in nine classrooms in a wing of P.S. 16. The section would be closed off from the rest of the school through the construction of swinging doors and English would be taught as a second language.

The court found that the school district's plan plainly created a symbolic link between the state and the Hasidic sect that would likely have a magnified negative impact on the minds of the young children attending P.S. 16. *Quinones,* 803 F.2d at 1241.

In this case, the School District asserts it accommodated the religious beliefs of the Brethren by opening the Vesta school, where to date, no technology is utilized. Furthermore, children are allowed to go home for lunch to accommodate the separatist beliefs of the Brethren. Finally, music, health and physical education are not offered at the Vesta school, but is available to a Vesta student at the Wabasso school.

 Plaintiffs assert, and this Court agrees, that a school district cannot open a school nor modify its curriculum based solely on the request of a religious group. In *Epperson v. Arkansas,* the Court found unconstitutional a state statute that made it unlawful to teach, in public schools and universities, the theory that man evolved from other species of life, or to adopt or use in a public school or university, a textbook that taught the theory of evolution. Applying the Establishment Clause's proscriptions in the school setting, the Court determined

> the State may not adopt programs or practices in its public schools or colleges which 'aid or oppose' any religion ... This prohibition is absolute. It forbids alike the preference of a religious doctrine or the prohibition of theory which is deemed antagonistic to a particular dogma.

*Epperson,* 393 U.S. at 106–107, 89 S.Ct. at 271–72. The Court then applied what are essentially the first and second prongs of the *Lemon* test to reach its holding that the statute was unconstitutional—What was the purpose and primary effect of the statute? "If either is the advancement or inhibition of religion then the [statute] exceeds the scope of legislative power as circumscribed by the Constitution." *Id.* at 107, 89 S.Ct. at 272 (citation omitted). The Court found that the sole reason the statute was enacted was because of "fundamentalist sectarian convictions." *Epperson,* 393 U.S. at 107–108, 89 S.Ct. at 272–73. Accordingly, the statute's purpose and primary effect was that of advancing religion. *Id.* Accord, *Edwards v. Aguillard, supra* (striking down a state statute that required creation science be taught where evolution was taught because the purpose of the statute was to restructure the science curriculum to conform to religious beliefs).

In *Pratt v. Ind. School Dist. No. 831, supra* the Eighth Circuit Court of Appeals held a school board's decision to remove the film "The Lottery" from the curriculum was unconstitutional because the decision was not made to serve substantial or reasonable governmental interests. Rather, the court found the basis for the decision was because a majority of the school board found the film's ideological and religious themes offensive. *Id.* at 778. In reaching its decision, the court rejected the school board's purported rationale for its action and affirmed the district court's finding that "the self-serving statements of the school board, made after the fact and not based on the previous record, to

the effect that this film is excluded because of the violence it teaches, are untenable in the light of the circumstances under which they were made." *Id.*

The School District attempts to distinguish *Epperson, Edwards* and *Pratt* from this case on the basis that they are not accommodation cases. As discussed above, the School District cannot escape the consequences of unconstitutional actions by labeling it an accommodation. The principles of *Epperson, Edwards* and *Pratt* are clearly applicable to this case, because such cases inform that the School District cannot tailor its curriculum for the sole purpose of conforming to religious beliefs.

■ After a careful review of the submissions of the parties and all relevant case law, the Court finds that the opening, and the manner of operation of, the Vesta school lacks a secular purpose and was done to conform to the religious beliefs of the Brethren.[9] The record before the Court establishes that negotiations and discussions concerning the possible opening of a school in Vesta commenced only after the superintendent, Bates, received the letter written by Paskewitz offering a building site, free of charge, with suggestions as to the curriculum to be offered. There is no evidence that the School District had contemplated reopening the Vesta school prior to the receipt of Paskewitz' letter. When the school was opened in Vesta, at the building owned by Paskewitz, the curriculum provided to its students was modified to exclude the use of computers and any other type of technology or media. No school lunches were provided as all children were allowed to go home for lunch. What these undisputed facts suggest is that the School District made a decision to open and operate a school in the manner suggested by Paskewitz in his letter to Bates. In other words, in a manner that specifically conforms to the religious beliefs of the Brethren.

The primary effect of the School District's decision to open the Vesta school is that of promoting religion. Evidence has been presented to the Court which shows that the perception of the community is that the Vesta school is a "Brethren" school. Although the school's charter provides that the school is a public school, and that anyone residing in the school district can attend, only Brethren children have attended the school. This fact is significant because the complete segregation of the Vesta school population is not the result of a random feature or of a geographic function. There are non-brethren children that live in Vesta whose parents have made the decision to send them to Wabasso, which is 14 miles away.

Furthermore, Plaintiffs' have submitted a number of area newspaper articles, which chronicled the events leading up to the opening of the Vesta school. In these articles, many references are made to the agreements made between the Vesta Brethren and the School District to open an elementary school in Vesta.

> Bates mentioned the plans of the Vesta religious organization known as The Brethren to open an elementary school in Vesta next year.

> Following a meeting between school administration and Brethren representatives on Feb. 3, it looked very probable that the school will open next fall.

*The Redwood Gazette,* dated Monday, February 15, 1993, Wiginton Aff.Ex.G.

---

9. In its briefs, the School District asserts that this Court has already ruled that the Vesta school is secular on its face and does not advance or inhibit religion, citing the Report and Recommendation of Magistrate Judge John Mason, adopted by this Court. In the Report and Recommendation, Magistrate Judge Mason recommended Lloyd Paskewitz be dismissed without prejudice, as complete relief could be granted in his absence. The motion at issue in the Report and Recommendation addressed lawsuit structure. *See,* October 4, 1995 Report and Recommendation p. 5. The claims against Lloyd Paskewitz concerned the lease agreement entered into between Paskewitz, the Brethren and the School District. The Plaintiffs' claimed in their Complaint that the Agreement, in and of itself, violated the Establishment Clause. Magistrate Judge Mason noted a distinction needed to be drawn between the Agreement and the operation of the Vesta school, *Id.* at 6, and determined that the *Agreement* was secular on its face—not the operation of the Vesta school. Accordingly, the School District's assertion that this Court has previously determined the decision to open and operate the Vesta school is completely without merit.

The Wabasso Board of Education has reached agreement with the Vesta Brethren to proceed with plans for a K–6 elementary school at Vesta this fall.

The board approved a motion to "begin pursuing legal avenues" to try and get the school open this fall.

The Brethren, who sent about a dozen representatives to Monday's board meeting, were also asked to look into how much it would cost to get the former Vesta school building—which they own—remodeled according to current state building, health and safety codes.

If it is legally possible to establish this school, it would be operated without the assistance of modern technology such as computers, and video and audio equipment. The reasoning behind this is that the Brethren's religious beliefs prohibit them from using such items and this has created a conflict in trying to send their children to the public school in Wabasso, which uses such teaching tools and methods.

\* \* \* \* \* \*

*The Redwood Gazette,* dated June 17, 1993, Wiginton Aff.Ex. I.

Another example of the perceptions of the community that the Vesta school is a "Brethren" school is an application the School District received when it was in the process of hiring a teacher for the Vesta school. In the cover letter, the applicant thought it important to note that she had experience at "church affiliated schools." Wiginton Aff. Ex.J.

What the School District has done is create an impermissible identification of its powers and duties with the religious beliefs of the Brethren by agreeing to open the Vesta school in a building owned by a Brethren member, and in the manner expressed by the Brethren. The fact that no religion is taught at the school does not affect the constitutional violation in this case.

Government promotes religion as effectively when it fosters a close identification of its powers and responsibilities with those of any—or all—religious denominations as when it attempts to inculcate specific religious doctrines. If this identification con-

veys a message of government endorsement or disapproval of religion, a core purpose of the Establishment Clause is violated.

*Grand Rapids,* 473 U.S. at 389, 105 S.Ct. at 3225. "The mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred." *Id. (quoting, Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 125–126, 103 S.Ct. 505, 511–12, 74 L.Ed.2d 297 (1982)).

Because this case involves a public elementary school, the perceptions of the young children of this community are of the utmost importance. "[P]roviding a crucial symbolic link between government and religion, thereby enlisting—at least in the eyes of impressionable youngsters—the powers of government to the support of the religious denomination." *Quinones,* at 1235 *(citing, Grand Rapids,* 473 U.S. at 383, 105 S.Ct. at 3222).

Nor does it matter that the state action involved in this case only benefits and endorses the beliefs of one religious sect. *Kiryas Joel,* 512 U.S. at ——, 114 S.Ct. at 2481. ("Here the benefit flows only to one single sect, but aiding this single, small religious group causes no less a constitutional problem than would follow from aiding a sect with more members or religion as a whole.") It is this Court's determination that the undisputed facts as presented by the parties clearly establish that the opening and operation of the Vesta school "conveys a message of government endorsement ... of religion" that violates a core purpose of the Establishment Clause.

The School District argues that its decision to open the Vesta school, and the decision not to utilize technology there was made without inquiring into parental motivation. In its brief, the School District asserts that the presentation to the school board regarding the possible opening of the Vesta school did not contain references to the religious backgrounds or beliefs of the students who would attend the Vesta school. (Mem. in Opp. to Plaintiffs' Motion for S.J. and in Support of Def.'s Cross Motion for S.J., p. 18.) Sufficient evidence has been presented, however,

to establish that the members of the school board were completely cognizant of the relationship between the proposition to open a school in Vesta and the religious affiliations of those parents proposing the school and the religious tenets of the Brethren which do not encompass the use of technology or other media. (*See,* Wiginton Aff.Exs. G, I, M, and N, Articles from *The Redwood Gazette;* Wiginton Aff.Ex.F, School Board's minutes "Meeting with the Brethren, Vesta Building.")

The School District also argues the Vesta school's curriculum is consistent with other schools within its boundaries as technology is *offered* at the Vesta school. In reality, however, technology is not offered at the Vesta school. The teachers at the Vesta school testified at their depositions that technology has not been available at Vesta since its opening in 1993. The record before the Court suggests that because the perception exists that the Vesta school is a Brethren school, non-Brethren children will not attend Vesta and technology will continue to be conspicuously absent.

Finally, the School District argues that what Plaintiffs are asking the Court to do is unlawfully discriminate against religion under the guise of an improper interpretation of the Establishment Clause. A similar argument was addressed in *Quinones, supra.*

> The Free Exercise Clause of the First Amendment ("Congress shall make no law ... prohibiting the free exercise [of religion]") does not prohibit a government from forcing a choice between receipt of a public benefit and pursuit of a religious belief if it can show a compelling reason for doing so ... Avoiding a violation of the Establishment Clause that would otherwise result from an apparent endorsement of the tenets of a particular faith is ample reason for compelling that choice.

803 F.2d at 1241–1242. The court in *Quinones* went on to note that "it was difficult to believe" that alternatives were not available that would not invoke the Establishment Clause. *Id.* at 1242.

Similarly, in this case, this Court finds it difficult to believe that alternatives are not available to the School District, which would accommodate the religious beliefs of the Brethren without resulting in such a clear endorsement of the Brethren's belief, as is the result here. Were not accommodations made for the Brethren children prior to the opening of the Vesta school?

Based on the above, the Court finds that the creation and operation of the Vesta school violates the mandates of the First Amendment's Establishment Clause as well as the Article 1, Section 16 of the Minnesota Constitution, by advancing religion.

In addition to requesting a declaration that the creation and operation of the Vesta school violates the Establishment Clause, and a permanent injunction enjoining further operation of the Vesta school or any school in conformance with the Brethren's religious beliefs, Plaintiffs also ask that the School District be required to refund the State of Minnesota all state aid received for the students who have attended the Vesta school since its inception and a judgment for attorney's fees and costs. Plaintiffs did not argue their entitlement to such relief in their briefs to the Court, and the Court is reluctant to do so at this time.

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part.

2. Independent School District No. 640 (the "School District") violated the Establishment Clause of the First Amendment and Art. 1, § 16 of the Minnesota Constitution by agreeing with the religious group known as the Brethren to open and operate a public elementary school for Brethren children in space leased for free from a member of the Brethren with a curriculum modified to delete the use of computers and other technology and media in conformance with religious objections raised by the Brethren.

3. The School District's operation of the Vesta School, attended only by Brethren children, with a curriculum modified to conform to Brethren religious objections to computers and other technology and media violates the United States and Minnesota Constitutions.

4. The School District is hereby enjoined from operating the Vesta School or any other school in conformance with the Brethren's religious objections to the use of computers and other technology and media.

5. The remaining requests for relief, concerning refunds to the State of Minnesota and a judgment of reasonable attorney's fees and costs are DENIED without prejudice. The parties may each submit a five page brief addressing the issues of refund and attorney's fees by August 29, 1996. No responsive briefs will be accepted by the Court.

6. Plaintiffs' claims against the Brethren are dismissed without prejudice and without costs or attorney's fees.